## EAST TEXAS FIRE INS. CO. v. J. M. COFFEE.

### (Case No. 1785.)

1. PARTIES.— Before judgment is rendered against a debtor, he is entitled to have before the court as plaintiffs all parties who have an interest in the debt, that he may be freed from further liability thereon.

2. POLICY OF INSURANCE — PARTIES — ASSIGNMENT.— A policy of insurance is such an instrument of writing as, under articles 266 and 267 of the Revised Statutes, may be assigned, and on which the assignee may maintain an action in his own name.

3. SAME — ASSIGNMENT.— Such assignment, after a loss has been sustained, passes the legal title and invests the assignee with the exclusive right to sue upon it. In his hands, however, it is subject to every discount and defense which could have been set up against it in the hands of the previous owner before notice of the assignment was given to the defendant. The fact that the assignment was made as a collateral security for a debt will not vary the rule. Following Perry v. Insurance Co., 25 Ala., 360; Archer v. Insurance Co., 43 Mo., 442; Carpenter v. Miles, 17 B. Mon., 601, and other cases cited.

4. SAME.— If the assignor of a policy has an equitable interest in the claim, he may be joined as a co-plaintiff, but cannot prosecute alone.

5. WAIVER.— A distinct denial of liability, and a refusal to pay on the ground that there is no contract, or that there is no liability on the policy of insurance, is a waiver of the condition requiring proof of loss; it is equivalent to a declaration that, even if proof is furnished, no payment will be made.

6. SAME.— The acts relied on, to constitute a waiver on the part of an insurance company of proof of loss, should be the acts of some one who had authority to bind the company, and should be such as to induce the insured to believe that his proof of loss is not desired, and would be unavailing. Following Beatty v. Insurance Co., 66 Penn. St., 17, and other cases cited.

7. DECLARATIONS — NEGLIGENCE.— An insured party cannot rely and act on the declarations of one not authorized to speak for the insurance company, even though the declaration of the speaker may be made in the hearing of the company's officer. It is his duty to inquire and know if the stranger utters the intention of the company, before acting on it. A failure to do this, in the absence of an approval of the declaration by the company's authorized officer, would be negligence.

8. INSURANCE COMPANY.— See charge of court as to the basis for recovery by an insured, who, by the terms of his policy, carried one-third of the risk himself, and when it was intended that other insurance companies should contribute to the payment of such sums as the defendant would have been liable for if no other insurance had been made on the property.

APPEAL from Galveston. Tried below before the Hon. W. H. Stewart.

Suit brought on a policy of insurance to Coffee & Pearson, and transferred, by consent of defendant, to Coffee, and to recover the amount of loss occasioned by fire to a stock of goods insured thereby, alleged to have been burned.

The defendant pleaded demurrers general and special; that the suit was brought prematurely; that plaintiff had not complied with the conditions of the policy in failing to furnish defendant with preliminary proofs, particular statement of loss, as required by defendant under the terms of the policy; to which the plaintiff replied by supplemental petition that the defendant had waived all such requirements, and had refused to pay the loss for which he sued, to which plea of waiver defendant demurred, and was overruled; defendant pleaded general denial. Verdict for plaintiff for $2,155.55, and judgment thereon.

To the facts stated in the opinion should be added the following: Harris, witness for plaintiff, having testified that he assisted plaintiff in making out the preliminary proofs of loss, and that at his request he had delivered them to T. R. Bonner, the secretary of defendant, on 24th April, 1882, and that a few days thereafter, he, witness, at the time being the traveling agent or drummer of Geo. Seeligson & Co., who held the policy by assignment as collateral security for plaintiff's indebtedness to Seeligson & Co., and that witness considered himself as having authority to demand pay of the policy and to apply so much as necessary to pay Seeligson's debt and to remit to Coffee a check for the balance. That the secretary, T. R. Bonner, and Mr. Gambling, the bookkeeper, and several other gentlemen were in defendant's office at the time. The witness Harris was then asked to state what was then said to him in reference to the subject of the claim under the policy by any officer of the defendant company. To which witness replied, " When I went into the office of the defendant company (the persons being present as above stated), I said: Gentlemen, how about the claim of Coffee on his policy; to which either T. R. Bonner or Mr. Granberry (I cannot say which) replied that affidavits had been made charging him with having burnt his own goods, and that matter had to be cleared up. This response was made in the immediate presence and hearing of Bonner; don't know whether it was made by Bonner or the bookkeeper of defendant." To which question to and answer of the witness the defendant objected on the ground that the same was not admissible under the pleadings, nor competent to establish or prove a waiver on the part of the defendant of any stipulation or condition in the policy or of any right of defendant thereunder, and because, further, it did not appear that witness was acting as the agent of plaintiff, or that he communicated the fact that he was the agent of plaintiff, if he was such agent. The witness was here permitted to testify as to the last ground of objection, and said: " I

assisted in making up the preliminary proofs of loss for plaintiff. He requested me to take them and deliver them to the secretary, which I did just as I would have done for any friend. I never told any officer of defendant then or at any time that I was the agent of the plaintiff, for I was not. I represented G. Seeligson & Co.; was then the drummer of that house, and was making the matter a subject of inquiry on their behalf, as they were the assignees of the policy as collateral for the debt which I was authorized to collect, and, after deducting Seeligson's debt, to remit plaintiff the balance." The court overruled defendant's objections and admitted the evidence so objected to.

The testimony introduced was quite too lengthy for insertion here.

*C. L. Cleveland,* for appellant, cited, on the admission of Harris' evidence: Mims *v.* Mitchell, 1 Tex., 443; Caldwell *v.* Haley, 3 Tex., 317; Hall *v.* Jackson, id., 309; Wright *v.* Wright, id., 168; Paul *v.* Perez, 7 Tex., 345; Denison *v.* League, 16 Tex., 408; Flanders on Ins., 527, 528; 5 Bennett's Ins. Cases, 164, 188; Texas Banking Co. *v.* Hutchins, 53 Tex., 61; Ins. Co. *v.* Lacroix, 45 Tex., 158; Story on Agency, sec. 134 *et seq.;* Livermore on Agency, 237; Bigelow on Estoppel, 480; Wood on Insurance, p. 411 *et seq.,* and p. 834 *et seq.;* note 1 to p. 705; 3 Gill (Md.), 370.

On the absence of proper parties, he cited: McFadin *v.* MacGreal, 25 Tex., 79; G., H. & S. A. R. R. *v.* Freeman, 57 Tex., 156; Wetmore *v.* San Francisco, 44 Cal., 300; Gould on Pleading, p. 173, secs. 8 and 9; 1 Chitty on Pleading, p. 3; Spratley *v.* Hartford Ins. Co., 1 Dill. C. C., 392; 10 Cush., 351; 25 Ala., 355; 12 Ia., 287; 43 Mo., 434; 111 Mass., 53; 3 Md., 341.

*Wheeler & Rhodes,* for appellee, cited: Flanders on Fire Insurance, pp. 541, 542, 543, 587; 2 Phillips on Insurance, § 1973; also 1 Phillips, §§ 81, 82, 83, 85.

Stayton, Associate Justice.— This action was brought by Coffee May 17, 1882, to recover on a policy of insurance against fire, issued by the appellant to Coffee & Pearson, on October 29, 1881, which, with consent of appellant, was transferred by Coffee & Pearson to appellee on January 21, 1881.

The action is brought by the appellee in his own name and right, as owner of the policy, but the evidence develops the fact that after the loss the appellee assigned the policy to George Seeligson & Co.,

probably as collateral security for a debt due by him to that company.

The exact manner in which the assignment was made does not appear, but under the evidence it must be deemed such an assignment as passed to Seeligson & Co. the title to the sum secured by the policy, even though they may hold it as a collateral security.

The general rule is, that the legal and beneficial owner of a demand is the proper person to sue upon it, but suits have been sustained when they are brought by the person holding the legal title, even though the beneficial ownership is in another, and this even though the holder of the legal title does not sue expressly for the use of the other.

In such cases a judgment against or in favor of the person holding the legal title, in the absence of fraud, would be binding on parties in interest; for permitting the apparent power to sue, which follows the legal title, to remain in one who has parted with the beneficial interest, is to be taken as giving to such person the power to bind all persons interested by an action brought to enforce the claim and prosecuted in good faith.

Such is not the attitude of this cause; so far as the record shows, the title, and consequent right to sue, had passed to Seeligson & Co. prior to the institution of the suit, and a judgment in favor of or against the appellee would not bind that company, unless it might be by way of estoppel, resulting from the fact that Seeligson & Co. may have directed the suit to be brought, and were really prosecuting it, though not nominally parties to it. Even if that were true, it could not be shown in this action, for Seeligson & Co. are not before the court, and in an action which might be hereafter brought by them, the appellant would be put to the trouble and expense of showing such facts as would or might make the judgment to be rendered in this case binding on them.

Such a course of procedure the law does not contemplate; and a debtor is entitled to have before the court, before a judgment can be rendered against him, such person or persons as plaintiffs as will make the judgment conclusive of the rights of all parties who have an interest in the debt, and he thus be relieved from further cost, vexation or liability.

Many authorities are to be found which hold that the assignee of a policy of insurance cannot maintain an action upon it in his own name; but those cases were decided in states in which the common law rule that the assignee of a chose in action cannot maintain a suit thereon in his own name was in force. Such is not the rule

here, under arts. 266, 267, R. S. A policy of insurance is such an instrument in writing as, under these articles, may be assigned, and on which the assignee may maintain an action in his own name.

The assignment of such an instrument, after a loss, passes the legal title to it, and clothes the assignee with the sole power to sue upon it, he, however, being bound to allow every discount and defense against which it would have been subject in the hands of the previous owner before notice of the assignment was given to the defendant.

That the policy may have been assigned to Seeligson as collateral security for a debt does not change the rule. Wetmore v. San Francisco, 44 Cal., 300; Percy v. Merchants' Insurance Co., 25 Ala., 360; Carter v. Fire Insurance Co., 12 Iowa, 292; Archer v. Insurance Co., 43 Mo., 442; Insurance Co. v. Flack, 3 Md., 341; Carpenter v. Miles, 17 B. Mon., 601. (This last case is under a statute, but illustrates the principle.)

As the pleadings stand, the fact that the claim against the appellant, which, after the loss, was but a chose in action, had been assigned to Seeligson & Co., affords a defense to the action, Coffee being the sole plaintiff, and the court should have given the second instruction asked by the appellant.

If Coffee has any equitable interest in the claim he may be a proper party to the suit, but he cannot prosecute it as sole plaintiff.

"The amount of loss was payable sixty days after notice and proof of the same required by the company shall have been made by the assured, and received at its office, and the loss shall have been ascertained and proved in accordance with the terms and conditions of the policy."

The fire occurred on February 26, 1882, and proof of loss was presented to the company on April 24, succeeding; this proof was unsatisfactory to the company, and on the next day further proof of loss, such as was required by the terms of the policy, was demanded from Coffee by the secretary of the company, by letter, which was received by Coffee on 26th. To this letter he made no reply, and he never gave or attempted to give to the company the information which under the policy he was bound to give, and which the company was entitled to receive, to enable it justly to adjust the loss on the policy.

A few days after the fire the company sent a person to adjust the loss, but no data were furnished to him by Coffee on which this could be done; this person also informed Coffee what proof of extent of loss would be necessary and was required by the policy; a

part of this information Coffee says he obtained afterwards, but he does not even say that he forwarded such information as he did get, either to the adjuster or to the company, as he was requested to do, although he says that he wrote to the adjuster, who states that his letters were never received.

The office of the company was in Tyler, and the residence and place of business of Coffee in Athens, the one in a few hours' run of the other by rail.

This action was brought on the 17th of May, 1882, and it was pleaded in defense that the suit was prematurely brought, to which it was replied that the company had unconditionally refused to pay the policy and thereby waived its right to further proof of loss, or to the sixty days within which to pay.

The pleadings of the plaintiff set out fully the facts which it was claimed operated as a waiver, and, when the proof to sustain them was offered, it was objected to on the ground that it varied from the pleadings; the objection was overruled, and this is assigned as error; and without entering into a full statement of the pleading and proof offered under it, we deem it proper to say that this objection should have been sustained.

There is no doubt that a "distinct denial of liability and refusal to pay, on the ground that there is no contract, or that there is no liability, is a waiver of the condition requiring proof of loss. It is equivalent to a declaration that they will not pay, though the proof be furnished; and to require the presentation of proof in such a case, when it can be of no importance to either party, and the contract of the party in favor of whom the stipulation is made has rendered it practically superfluous, is but an idle formality, the observance of which the law will not require." May on Insurance, 469.

Waiving all question as to whether Harris, the person to whom the declarations which are claimed to have operated as a waiver of further proof of loss were made, was the agent of Coffee, we are of the opinion that the facts proved were probably not sufficiently to show such waiver.

To have the effect of waiver, the acts relied on should be the acts of some one who had authority to bind the company, and should be such as are calculated to induce the insured to believe that a compliance by him with the duties which, through the policy, he has engaged to perform, is not desired by the insurer or would be of no effect if done. Beatty v. Insurance Co., 66 Penn. St., 17; Diehl v. Insurance Co., 8 P. F. Smith, 452; Keenan v. Fire Insurance Co.,

13 Iowa (Withrow), 381; Edwards *v.* Fire Insurance Co., 3 Gill, 176; Ayres *v.* Insurance Co., 17 Iowa (Withrow), 178.

It is rendered pretty certain that no person authorized to speak for the company made any declaration, even to Harris, which, if made to Coffee, would have operated as a waiver of further proof of loss.

It is clearly shown, and in no way controverted, that Gambling had no authority to bind the company in any way; and that the statements which Harris testifies Gambling made were even heard by the officer of the company said to have been in the room is expressly denied. If the officer of the company heard the conversation between Harris and Gambling, it is doubtful if it would bind the company if Gambling's statement was unauthorized. It certainly could not have that effect if it did not mislead Coffee as to the intention and desire of the company.

That it could not have done so in this case would seem most likely; for the circumstance that suspicion was aroused as to the *bona fides* of the loss seems to have been matter of general notoriety prior to the time the company demanded further proof of amount of loss.

This would seem to rebut the idea that the company intended to resist the payment on the rumor of the destruction of the property by the insured, and to induce the belief that the company intended fairly to examine the facts bearing on the manner and extent of the loss. The letter of the secretary of the company to Coffee of April 25th, pointing out the defect in the proof of loss, and demanding further proof, expressly notifies him that such demand is not to be construed as a waiver of the right to make further objections to the proof of loss.

It would seem, further, that an insured ought not to rely and act upon the declaration of one not authorized to speak, even though the declaration of the speaker may be made where an officer of the company may hear it. He then has an opportunity, by inquiry, to know whether the intention of the company is expressed by the stranger, and it would seem as much his duty to inquire in reference to that matter as any other affecting his interest, before acting on such statements.

A failure to inquire in such a case, there being nothing in the act of the officer of the company to indicate that he approved or acquiesced in the declaration of a stranger, would seem to be negligence.

Be this as it may, and we do not wish to be understood as passing definitely on the question of the sufficiency of the evidence to show a waiver of further proof of loss, we are clearly of the opinion that the question was not fairly submitted to the jury by the charge of the court.

The policy contained the following provisions:

Section VII of the policy sued on provides: "In case of any other insurance upon the property hereby insured, whether valid or not, or made prior or subsequent to the date of this policy, they shall be entitled to recover of this company no greater proportion of the loss sustained than the sum hereby insured bears to the whole amount so insured thereon; and it is hereby declared and agreed that in case of the insured holding any other policy in this or any other company on the property, subject to conditions of average and co-insurance, this policy shall be subject to average and co-insurance in like manner. Any policy, floating or otherwise, attaching in whole or in part to the property covered by this policy, shall, as between the assured and this company, be considered as contributing insurance for the full amount of such policy, and liable as such to pay *pro rata* any loss, total or partial, on the property hereby insured.

"Reinsurance for any other company shall be adjusted on the basis of *pro rata* liability with said company, and in case of loss this company shall pay its proportion of loss sustained by said reinsured company, whenever such reinsured company shall have paid."

The first clause of the policy provides: "It being a rule of this company not to insure the full cash value of any property, it is understood and agreed that in the event of loss by fire this company shall not be liable for over *two-thirds* of the cash value of said property at the time of the fire and not more than the amount hereby insured."

The last clause of the policy provides: "And it is hereby mutually understood and agreed by and between this company and the assured, that this policy is made and accepted upon and with reference to the foregoing terms and conditions, which are hereby declared to be a part of this contract, and are to be used and resorted to in order to determine the rights and obligations of the parties hereto in all cases not herein otherwise specially provided for in writing."

The policy in question was for $2,000, and in addition thereto

there was another policy on the goods for $1,000, issued by another company.

There are two things which clearly appear from the policy: 1st. That it was the intention of the company, in so far as it was concerned, that one-third of the risk should be on the policy holder; a precaution intended to secure good faith and care of the owner. 2d. That it was intended that any other insurance on the property should contribute to the payment of such sum as the company would be liable for if no other insurance was effected.

The court charged the jury: "If your verdict be for the plaintiff, then you must determine from the evidence the cash value of the goods covered by the policy at the time of the burning, and if the cash value exceeded $3,000, then the amount of the verdict would be $2,000, with eight per cent. per annum interest from sixty days from the day of the waiver, if there was a waiver, to the present time."

This charge we think erroneous, for it deprives the appellant of all contribution from the other insurance company, which is to be had practically by the lessened sum which it would have ultimate'y to pay to the assured, if found liable, and imposes on it a liability as great as would have existed had there been no other insurance than that through the policy in question.

In Haley v. Dorchester Mut. Fire Ins. Co., 4 Bennett's Fire Ins. Cas., 354 (S. C., 12 Gray, 545), in construing a policy in principle essentially the same as the one under consideration, it was said: "The basis of calculation was in all cases to be the value of the property insured after deducting one-fourth of such value. Of this sum the defendants were to pay such proportion as the sum insured by the policy issued by them should bear to the whole sum insured by all the policies existing on the property at the time of the loss. In other words, the defendants were to be liable only for their proportion of three-fourths of the value of the property insured; and this proportion was to be ascertained by calculating the ratio which the sum insured in the policy declared on bore to the whole sum insured by all the policies existing on the property. Thus, if the whole property at the time of the loss amounted to $10,000, the sum on which the liability of the defendants must be reckoned would be three-fourths of ten thousand, or $7,500, and of this last sum the defendants could be held to pay only the proportion which the amount insured by them, viz., $2,000, bore to the whole sum insured, to wit, $5,000," etc.

We believe this to be the correct rule to apply in this cause.

For the errors indicated, the judgment will be reversed and the cause remanded, that the parties may take such steps in the case as may be required to authorize its further prosecution.

REVERSED AND REMANDED.

[Opinion delivered March 14, 1884.]

Chief Justice WILLIE did not sit in this case.