J. W. WINN v. FT. WORTH AND RIO GRANDE RAILWAY CO.

No. 1397.

**Assignment of Chose in Action.**

The common law rule that the legal title to a chose in action was not assignable
should be regarded as obsolete or inapplicable in this State, and an assignee of such
right of action, since he holds both the legal and equitable title, should sue there-
on in his own name.

**Same—Fact Case.**

Plaintiff brought suit against defendant railway upon a claim for damages for
refusing to receive and ship live stock and for injuries to other stock received and
shipped, which claim he had before that time transferred to another by an instru-
ment authorizing the assignee to sue in his, the assignor's, name. The fact that
said assignment had been made being developed during the trial, the court properly
found plaintiff not entitled to recover, and dismissed the case without further in-
quiry into the merits.

APPEAL from Brown.    Tried below before Hon. J. O. WOODWARD.

*Goodwin & Grinnan,* for appellant.—Revised Statutes, Articles 266 and
267, relate to the assignment of written instruments and provide that suit
thereon may be brought in the name of the assignee.    The instruments
there referred to are non-negotiable, and pass only by assignment. This
statute was passed for the relief of assignees merely, and not, as we
understand it, to force them to sue.    The common law rule was merely
relaxed so as to allow them to sue.    The right to sue in the name of the
assignor is not by these articles abridged, but an additional remedy given.
The contention in nearly all the Texas cases has been, not over the right
of the assignor, but of the assignee to sue.    Rolleson v. Hope, 18 Texas,
446; 2 White & W. C. C., 340; Morris v. Schooner Leona, 62 Texas, 35,
and numerous authorities therein cited.    In this case the issue is that the
assignor can not sue.    As we understand the common law rule, he only
could sue.    Equity permitted the assignee to sue.    Our statute adopted
the rule in equity which permits suit by assignee, but does not exclude

suit by assignor.    Matherson v. Wilkinson, 79 Me., 159; 32 Md., 100; 41 Mich., 352; 53 Conn., 167.

If this claim comes within the statute, Revised Statutes, arts. 266 and 267, and if these articles are held to be mandatory, we submit that the contract of assignment controls.   By its terms the Gulf, Colorado and Santa Fe Railway is authorized to ask, demand, sue for and recover by suit or other legal process against appellee, in the name of appellant. The contract not being illegal, should control this matter.   Appellant having reserved the right to have the suit brought in his name, or having contracted that it might be brought in his name, and the contract having been introduced in evidence, appellee is protected against further suit.

Should the court hold that the assignor of an instrument in writing can not sue thereon, then we suggest that the claim or demand assigned in this instance was not a right or demand evidenced by any instrument of writing within the meaning of Revised Statutes, arts. 266 and 267.

No contract or instrument was assigned by appellee to the G. C. & S. F. R. R., and this suit is not based on contract.   The appellee is sued for a tort, and the claim assigned is for this tort.   The above articles refer only to the assignments of instruments of writing and give the assignees of such instruments the right to sue in their own names.

In the absence of a statute changing the common law rule, the assignee of a demand growing out of a tort would have no standing in the court, and the suit would have to be brought in the name of the assignor.   Hutchison on Carriers, sec. 748;   W. & W. C. C., sec. 340; 2 Wilson, Civil Cases, secs. 165, 169; Railway v. Fort, 44 Miss., 423; Whittenton Mfg. Co. v. Packet Co., 21 Fed. Rep., 896; Bliss on Code Pleading, secs. 14, 19.

*N. H. Lassiter,* for appellees.—The assignor of a chose in action has no right to maintain a suit thereon solely in his own name.   Ins. Co. v. Coffee, 61 Texas, 287;   Railway v. Freeman, 57 Texas, 156.

KEY, ASSOCIATE JUSTICE.—*Opinion.*—Appellant brought this suit in his own name and, so far as the record shows, for his own use and benefit to recover the statutory penalty prescribed by article 4255 of the Revised Statutes for refusal to receive and ship certain live stock and for damages for injuries to other stock that were received and shipped.

Appellee introduced some evidence tending to show that appellant had assigned the cause of action to the Gulf, Colorado & Santa Fe Railroad Company, whereupon appellant put in evidence a written assignment or transfer conveying to the said G. C. & S. F. Railroad Company the entire right of action upon which the suit is founded.   Said transfer was executed before this suit was brought; and it expressly authorizes the G. C. & S. F. Railroad Company to sue on the cause of action assigned in appellant's name.   When this proof of assignment was made, the court below, being of the opinion that the plaintiff could not maintain this

action as brought, declined to proceed with the trial and dismissed the case, and this ruling raises the only question presented for decision.

If the assignment divested appellant of all title, both legal and equitable, to the cause of action, he was not entitled to sue (Insurance Co. v. Coffee, 61 Texas, 287), but if, notwithstanding the assignment, the legal title remained in him, then he could maintain the suit. Insurance Co. v. Allison, 30 S. W. Rep., 547. It becomes necessary, therefore, to determine the character of title transferred by appellant to the Gulf, Colorado & Santa Fe Railroad Company.

It was held in Railway v. Freeman, 57 Texas, 156, that a similar cause of action, though not among those authorized by statute to be assigned, was assignable, and that the assignee could maintain an action thereon in his own name; but whether or not he could acquire the legal title to such a right of action does not appear to have been ruled on.

The assignment in this case transferred appellant's "entire claim, demand and right of action.". This language is broad and comprehensive and, if appellant had the power to do so, it must be held to divest him of all title, both legal and equitable, to the cause of action.

At the ancient common law, with the exception of negotiable instruments, choses in action were not assignable, but the chancery courts would allow the assignee to sue thereon in the name of the assignor. 1 Am. & Eng. Encycl. Law, 827; 3 Ib., 236.

The reason for the rule, its fallacy and injustice as applied to modern jurisprudence, are clearly stated in note 3, page 827, of volume one of the American and English Encyclopedia of Law, in the following extract from Thalheimer v. Brinckerhoff: "It was a principle of the common law that a right of action could not be transferred by him who had the right to another. When we seek the reason of this rule we find it in the motive already mentioned, an apprehension that justice would fail and oppression would follow if rights of action might be assigned. Feeble, partial, and corrupt must have been the administration of justice where such a reason could have force. In early times this rule concerning rights of action was rigorously enforced. As the entire right of action could not be assigned, so no part of it could be transferred, and no man could purchase another's right to a suit either in whole or in part. Hence the doctrine of maintenance, which prohibits contracts for a part of the thing in demand, was adopted as an auxiliary regulation to enforce the general principle which prohibited the transfer of all rights of action. But the rule of the common law that rights of action cannot be assigned has in modern times been reversed. The apprehension that justice would be trodden down if property in action should be transferred is no longer entertained, and the ancient rule now serves only to give form to some legal proceedings. In the courts of equity this rule was never followed, and those courts have always considered and treated the rule as unjust and have supported assignments of rights of action. Experience has fully shown not only that no evil results from the assignments of rights of action, but that the public

good is greatly promoted by the free commerce and circulation of property in action as well as of property in possession."

It was a rule of the common law that, no matter how perfect his chain of title might be, a person not in possession of real estate could not convey any title thereto as against any one in possession; but in Carder v. McDermett, 12 Texas, 548, Chief Justice Hemphill, in an able opinion, demonstrates the inapplicability of such a rule in this State. Much of the reasoning upon which that case rests is pertinent to this; but we content ourselves with the following quotations from Judge Hemphill's opinion: "It may be admitted that in England and most of the states such title as the one purchased by the plaintiff would be denominated a pretended title the sale of which would, as against strangers, transfer no right; for, in the purview of the common law, all titles of persons who lay claims to lands while another is in possession are thus denominated. 4 Kent, 446. This restriction on the power of alienation is attributed by Chancellor Kent to the statute of 32 Henry VIII. prohibiting the sale of titles unless the vendor had been in the actual possession or had received the rents and profits for one year previous to the grant.

"All such provisions in England, whether derived from the statute or the Common Law, were founded on a state of society which never had any existence in this country. We read of chieftains attending Courts with hundreds of retainers, and of course, under such circumstances, mere rights of action should not have been assigned because, according to Lord Coke, under "color thereof pretended titles might be granted to great men whereby right might be trodden down and the weak oppressed. This is the reason given for not assigning choses in action or causes of action in those days; and it is extremely cogent, where the assignment brought the great in conflict with the weak. But is this the only aspect of wrong presented by the picture of those times? Let us suppose the man of humble station to be dispossessed by his powerful neighbor. If so, his chance of redress would be quite hopeless. The predicate of the hypothesis is that the great were beyond the reach of the courts, and of course, as the disseizee could neither sell his right nor invoke the aid of such as could struggle with his oppressor on equal terms, he must yield such claims as could be sustained by neither judicial protection nor individual power.

"Let that be as it may, and whether the reason given for the rule be or not a sufficient justification in the times to which it applied, one thing is certain: no such condition of society has existed in this State to authorize, under pretense of defeating combinatory and unhallowed schemes of oppression, any such rule or principle as would deprive an owner of the right to sell his lands, simply because there was another in possession."

"The fact that persons out of possession may sell titles which have no foundation in law, and which may be purchased for no other purpose than vexation and the profit of litigation, is no sufficient reason why all

lawful owners, ousted of possession shall be deprived of control over their property. This would be punishing the community in order that some pests might not escape. If the ancient rules of the Common Law with respect to the non-assignability of mere rights or choses of action and also with respect to the modes of conveyance of real property were still recognized, then there might be some reason for the rule. For, at Common Law, no interest could be conveyed except where the grantor was in actual or constructive possession of the thing granted. And this was on the general ground that such conveyance would multiply suits and be transferring law-suits to strangers. Hence a debt or other chose in action could not be assigned (2 Story, 1,039), nor could a right of entry or action in real property. This notion against the assignment of choses in action has long since been exploded, but in relation of assignments of rights of entry has more firmly maintained its ground."

While in the main the fundamental principles of the common law prevail in this state, such of its doctrines as are not applicable to our changed conditions and circumstances, and such of its technicalities and rules of procedure as are not in harmony with our system of jurisprudence, are not recognized as binding upon us. Therefore, as the reason upon which the rule was founded has never existed in this State, and as it has always been our policy, as evinced by our blended system of law and equity, our disregard of common law forms of action, our system of code practice, and many other legislative and judicial utterances, to simplify all judicial proceedings, we think the Common Law rule, that the legal title to a chose in action was not assignable, ought to be regarded as obsolete or inapplicable in this State; and an assignee of such right of action, holding both the legal and equitable title, should sue thereon in his own name.

Appellant relies also on the term of the assignment for authority to maintain the action, as brought; but the instrument will not bear that construction. It authorizes the Gulf, Colorado & Santa Fe Railroad Company to sue and recover in appellant's name; but it does not attempt to confer any authority on appellant to sue in his own name, or otherwise. Besides, appellant is not a party to that instrument; and it has the right, for its own protection, to have the suit brought in the manner required by law. Insurance Co. v. Coffee, 61 Texas, 290.

This case is distinguishable from Insurance Co. v. Allison, 30 S. W. Rep., 547, and other cases, which hold that the holder of the legal title to a written obligation may recover on it in his own name, although some one else may be the equitable owner. The judgment of the District Court is affirmed.

*Affirmed.*

Delivered January 8, 1896.