## ECKEL v. CAMDEN FIRE INS. ASS'N.
### (No. 9103.)

Court of Civil Appeals of Texas. Galveston.
March 21, 1928.

Rehearing Denied April 12, 1928.

1. **Limitation of actions** ⬅124—Where original petition was filed within time, petition of intervener, claiming under same cause of action, held not barred.

Where original suit against insurance company was commenced within statutory period, intervener claiming right to recover from defendant on identical cause of action asserted in petition could file petition in intervention, notwithing statutory period had since lapsed.

2. **Dismissal and nonsuit** ⬅53(6)—Dismissal of action for want of authority of attorneys held unwarranted, where plaintiff and intervener appeared and consented to continuation of suit (Rev. St. 1925, art. 320).

Alleged want of authority of attorneys to prosecute suit in name of nominal plaintiff *held* not to warrant exclusion of attorneys from case, or dismissal of suit, under Rev. St. 1925, art. 320, where plaintiff and intervener were both present in court, and plaintiff expressed his willingness that the suit might continue, and attorneys actually appeared in court for purpose of prosecuting suit before the action was dismissed.

3. **Dismissal and nonsuit** ⬅53(6)—Dismissal of original petition for want of authority of attorneys did not warrant dismissal of intervener's petition, based on same cause (Rev. St. 1925, art. 320).

Where petition of intervener and undisputed evidence on motion to dismiss showed that intervener was owner of major part of claim sued on, dismissal of the original suit for want of authority of attorneys to prosecute it, under Rev. St. 1925, art. 320, did not defeat intervener's rights, or justify dismissal of his petition, even if original petition had been dismissed at request of nominal plaintiff, where no new cause of action was asserted by intervener.

4. **Dismissal and nonsuit** ⬅53(6)—Instrument giving right to recover claim in transferor's name precluded dismissal of transferee's suit on ground of want of authority from transferor made nominal plaintiff (Rev. St. 1925, art. 320).

Instrument by which insured transferred all of his interest against insurance company as security for advances, giving transferee right to recovery against insurance company in transferor's name, *held* to authorize transferee to sue insurance company in name of transferor, preventing dismissal of suit under Rev. St. 1925, art. 320, for alleged want of authority of attorneys to represent nominal plaintiff, especially where the transfer was prepared under the supervision of the insured's attorney, who represented him in the settlement of the controversy with the insurance company.

Error from District Court, Waller County; J. L. Manry, Judge.

Suit by Frank Eckel against the Camden Fire Insurance Association, in which the Northern Insurance Company intervened. From a judgment dismissing the suit, plaintiff and intervener bring error. Reversed and remanded.

Thompson, Knight, Baker & Harris, and Adair Rembert, all of Dallas, for plaintiff in error.

Andrews, Streetman, Logue & Mobley, of Houston, for defendant in error.

LANE, J. Frank Eckel was asserting a claim against the Northern Assurance Company, hereinafter for convenience referred to as the Northern Company, for the sum of about $1,800. He had placed this claim in the hands of Mr. Allen Hannay, as his attorney, for collection, with instructions to handle the matter in his own way. In the early part of February, 1922, one Joseph P. Clark was the representative and local agent of the Camden Fire Insurance Association, hereinafter called the Camden Company, at Hempstead, Waller county, Tex., and at such time, and at all times since, Cravens, Dargan & Roberts, a copartnership, of Houston, Tex.,

were the general agents of the Camden Company.

On or about the———day of February, 1922, Eckel approached Joseph P. Clark for the purpose of obtaining fire insurance upon a certain storehouse, stock, fixtures, etc., property of the Eckels, situated near Hempstead, in Waller county, Tex. Clark thereupon made an inspection of said property, and took from Eckel a written application for insurance thereon for the sum of $2,050. Upon such application being made, Clark made a diagram of the property and furnished the same to the general agents of the Camden Company, together with other information, as well as the answers made by Eckel to questions propounded to him by Clark. Clark signed his name to such application and other data accompanying the same. These papers were dated February 26, 1922. The material part of the application is as follows:

"Application of Mr. Frank Eckel for insurance against loss by fire and lightning for the sum of ($1,250.00) ($800.00) and for insurance against loss by tornado or cyclone for the sum of $———, as stated below, from the date of approval of this application by Cravens, Dargen & Roberts, managers at Houston, Texas."

This application was forwarded to Cravens, Dargan & Roberts, general agents of the Camden Company, at Houston, for their approval or rejection. On the 3d day of March, 1922, Cravens, Dargan & Roberts accepted the application by the following writing:

"Dated March 3, 1922. James P. Clark, Hempstead, Texas. Application Frank Eckols building, stock and fixtures Prairie View—Satisfactory. Write in Camden subject to inspection later by our special agent, and subject to investigation we are making. Return application and send us survey and diagram with daily report so we may have rate published."

On the 4th day of March, 1922, a fire destroyed the storehouse, stock, fixtures, etc., the property of Eckel, mentioned in the application and acceptance above set out, and Eckel or his agent or attorney demanded of the Camden Company payment of the said sum of $2,050, claiming that its acceptance of Eckel's application for insurance was in effect an insurance contract. After the destruction of Eckel's property, Eckel, for and in consideration of a certain sum of money paid by the Northern Company in settlement of the controversy between the two, executed and delivered to the Northern Company a written instrument, the material parts of which are as follows:

"I, Frank Eckel, hereby assign and transfer to the Northern Assurance Company any and all claim I may have against any company represented by Cravens, Dargan & Roberts, of Houston, Texas, covering certain of my property and damaged by fire, on March 4, 1922, as

security for advances made me by the Northern Assurance Company on this day, on account of such loss, to be repaid to the Northern Assurance Company only out of the recovery, if any, as against the company or companies represented by Cravens, Dargan & Roberts, this agreement not being an agreement on my part to pay any sum, but that the Northern Assurance Company shall have any and all recovery that they may make against any company or companies represented by Cravens, Dargan & Roberts, to repay the advance which they have made me, and any expenses to which they may be put to affect any such recovery, it being understood that while recovery can be attempted in my name, and I will assist to the best of my ability in the same, that I shall not be charged with any expense in connection therewith, but all of such expenses shall be borne by the Northern."

By authority of the transfer of Eckel above set out, Will. C. Thompson and Allen Hannay, attorneys for the Northern Company and Eckel, filed suit in the district court of Waller county on the 27th day of January, 1923, in the name of Frank Eckel and against the Camden Company, to recover the sum of $2,050, alleged to be due by reason of insurance due by the Camden Company upon the insurance contract mentioned in the aforesaid transfer. On the 5th day of April, 1922, the Camden Company, through its counsel, filed in court the following motion:

"Comes now the Camden Fire Insurance Association, defendant in the above styled and numbered cause, and shows to the court that it believes that this suit was instituted against and is being prosecuted against it without authority on the part of the plaintiff's attorney or attorneys, as the case may be. Wherefore said defendant moves the court to require said attorney or attorneys, as the case may be, to appear before this court and show by what authority he or they instituted, or by what authority he or they prosecute, this suit; and defendant also requests that the court set down this motion for hearing at a stated time, in order that due notice may be given said attorney or attorneys, as the case may be, and that he or they may be allowed five (5) days from and after such notice before being required to appear and show said authority."

Said motion was verified. After the filing of such motion, to wit, on the 12th day of October, 1926, and before the motion was heard and disposed of, the Northern Company, by and through its attorneys, Thompson, Knight, Baker & Harris, filed what it termed its supplemental petition, in which it joined Frank Eckel as plaintiff in the prosecution of the suit theretofore filed by Thompson and Hannay, making Frank Eckel plaintiff against the Camden Company, and on the same day the Camden Company filed the following motion:

"Comes now the Camden Fire Insurance Association, defendant in the above cause, and moves the court to dismiss this suit, as brought in the name of Frank Eckel on January 27,

1923, in the district court of Waller county, because of the lack of authority of plaintiff's attorney to file this suit."

In support of such motion the Camden Company offered in evidence the following affidavit:

"State of Texas, County of Waller.

"Before me, the undersigned authority, on this day personally appeared Frank Eckel, known to me to be the person whose name is hereto subscribed as affiant, who being by me duly sworn, deposes and says:

"My name is Frank Eckel. I have been advised that a certain suit has been filed in my name against Camden Fire Insurance Association, a corporation, in the district court of Waller county, Texas, citation having been served therein upon Mr. Joseph P. Clarke, the local agent of said Insurance Company; the same being returnable on the first Monday in April, 1923. I have also been advised that the said suit involved a supposed claim by me against said defendant for insurance money alleged to be due by reason of a fire loss sustained by me as the result of my grocery store having been burned. This affidavit is made to definitely certify that I had nothing to do with the filing of this lawsuit, and that I do not claim and have not claimed that the Camden Fire Insurance Association owes me, or has ever owed me, any money on account of said fire, and that I do not claim that I had any insurance written by said company on my grocery store. I have never made out any proof of loss, or presented any claim to said company, or to any agent of said company, and do not intend to take any such action.          [Signed]  Frank Eckel.

"Sworn to and subscribed before me this 31st day of January, 1923.
     "[Seal]          T. O. Taylor,
"Notary Public, Waller County, Texas."

Attorney Allen Hannay, a witness for the plaintiff on the motion, testified that he handled a claim for the plaintiff, Frank Eckel, which he had relative to a fire that destroyed his property (the claim referred to was one against the Northern Company); that in the negotiations with Mr. Thompson, who represented the Northern Company, he and Thompson came to an agreement or settlement, the substance of which was that he, for Eckel, surrendered a policy issued by Thompson's client to Eckel; that in such settlement Eckel was paid $1,800; · that in consideration of such agreement and settlement Mr. Eckel agreed to turn over to Thompson's client (the Northern Company) any claim he might have against the Camden Company; that to his best recollection such agreement was just about the same as set out in the transfer from Eckel to the Northern Company, heretofore set out in this opinion. He stated the transfer was executed in consideration of Mr. Thompson's client paying to Eckel $1,800.

Frank Eckel testified that he made a claim against the Northern Company upon a policy of insurance issued by said company, insuring his property, which was destroyed by fire on the 4th day of March, 1922. That the Northern Company paid him either $1,880 or $1,870; that he could not remember which; that Mr. Allen Hannay handled the negotiations for him; that he left the matter entirely with Mr. Hannay; that the transfer was prepared in Mr. Hannay's office in Houston, and was left there for him to sign; that he signed the transfer without reading it, as he left the matter of settlement to Mr. Hannay. Testifying further, he said:

"As to·whether I, at the present time, have any objection to this suit which is now pending against the Camden Fire Insurance Association being prosecuted in my name—under that agreement right there (the transfer), that covers it. I thought he was handling it. When I signed this affidavit that has been read in evidence, I did not understand the circumstances as I understand them now. I left it all entirely to Mr. Hannay. When I signed that affidavit that has been read in evidence, I did not understand just how Mr. Hannay had handled the matter for me. Having now learned how he handled it for me, I do not know as I have any objection to this proceeding that has 'been provided for in this. agreement, as long as it don't reflect on me; I am out of it.

"It is not true that I have assigned the matter over as security to the Northern Assurance Company, account of the money they paid me. I understood they got the policies I made with them after he settled with them for me. He settled with the Northern Assurance Company for me. I understand now that this instrument marked Plaintiff's Exhibit A was one of the instruments I signed; that 'X' there was the one designated for me to sign. · That was the paper left with his partner.

"As to whether, at the time I signed the affidavit the defendants read, I understood how it happened, I did not read it at all; I just signed where he designated for me to sign. My understanding was the case was settled; all I had to do was to sign the papers. I understood that my claim against the Northern Assurance Company was settled."

On cross-examination the witness testified as follows:

"I say I am out of it, out of this suit. I think so; yes, sir. I have no interest in this suit. I am out of it, and I have no interest in this suit at all, that I know of. My understanding is that it is between the Northern and Camden.

"Along about January 31, 1923, I made an affidavit before T. O. Taylor, a notary public, and in that affidavit I stated: 'I have been advised that a certain suit has been filed in my name against Camden Fire Insurance Association, a corporation, in the district court of Waller county, Texas; citation having been served therein upon Joseph P. Clarke, the local agent of said insurance company, the same being returnable on the first Monday in April 1923. I have also been advised that the said suit ·involved a supposed claim by me against said defendant for insurance money alleged to be due by reason of a fire loss sustained by me as the result of my grocery store having been burned. This affidavit is made to definitely certify that I had nothing to do with the filing

of this lawsuit, and that I do not claim and have not claimed that the Camden Fire Insurance Association owes me, or has ever owed me, any money on account of said fire, and that I do not claim that I had any insurance written by said company on my grocery store.' I made that statement and swore to it. I have never taken the position that I had a suit against the Camden Fire Insurance Association; I have never had anything owing to me by the Camden. I have had no contract directly with the company; I have never made any claim against them; I have never prepared and filed any proof of loss for that property. I signed that affidavit voluntarily.

"As to whether I have no interest in this suit now pending, why Mr. Hannay tells me that this case has never been thoroughly completed; I left it to him. So far as I am personally concerned, I have no interest in the outcome of it; not until he gets it completed. I have an interest if he ever completes it. As to what I mean by 'completing it,' I can't tell you; you will have to answer it. I am not claiming now for the first time that the Camden Fire Insurance Association owes me money; I never had nothing against the Camden, and I haven't now. I do not think or take the position that the Camden Fire Insurance Association owes me any money on account of the loss of my barn or store four years ago. I never had no contract with them.

"If this suit is based upon a contract that I had with the Camden Fire Insurance Association, my position is that I never had that contract; I never had any contract with them. I do not mean to urge that this company had a contract of insurance with me, or on my store and furniture and merchandise; not to me, they did not. I would not make the claim that they had a contract of insurance with me. I do not make it, and have never made it; and so far as I know I do not intend to make it in the future. I never had that intention, and never had that belief. I settled with the people I had policies with. I never had any contract with the Camden Fire Insurance Association. I never tried to get any money out of them on account of any contract I had with them. I am not trying to get any money out of them now on account of any contract, because I do not think I had any contract—I did not have any."

On redirect examination he testified:

"As to whether I am now attempting to try and determine the legal effect of what might have transpired between me and the Camden Fire Insurance Association, and whether I really know about that one way or the other as to the legal effect of what happened, I don't know nothing about that; that was up to Mr. Clarke and Mr. Hannay. Mr. Clarke was the local agent, and Mr. Hannay was attorney. When I signed this agreement that my name appears to here, marked Exhibit A, I at the time was leaving the whole settlement to my attorneys, to Mr. Hannay. This agreement that I executed, and which my lawyer had prepared, Exhibit A, among other things, states that the recovery may be attempted in my name against any one of these companies represented by Cravens, Dargan & Roberts.

"As to whether, after having had that ex-

plained to me from the instrument which I executed, as I have just testified, I did or did not agree that this suit might go ahead in my name, to be prosecuted pursuant to the terms of this agreement, and whether I now agree, under all the circumstances as I have them before me, to permit this suit to be prosecuted in my name under the terms of this agreement—the witness answers, just like I stated here, that there would be no costs on my part. I would be clear of everything, out no money, and not responsible for anything. This instrument says that the Northern Assurance Company may have any and all recovery they may get against any company or companies represented by Cravens, Dargan & Roberts. In other words, I gave them all recovery in this suit, and I suppose all the recovery in this suit."

The plaintiffs offered in evidence the transfer made by Eckel to the Northern Company, hereinbefore set out. Upon hearing of the above motion, the court found that the attorneys, Thompson and Hannay, who filed the suit in the name of Frank Eckel, did so without authority of Eckel, and dismissed the suit so instituted as to Frank Eckel, and on the same day sustained an exception of the Camden Company to the petition of the Northern Company, and dismissed its suit.

The exception mentioned was in effect a demurrer to the petition, in that it showed on its face that the destruction of Eckel's property occurred on the 4th day of March, 1922, and it also shows that it was not filed until the 12th day of October, 1926, more than four years after the cause of action of the Northern Company against the Camden Company, if any it had, accrued, and that the same was therefore barred by the four-year statute of limitation. Judgment was rendered, dismissing the suit. From the findings and judgment of the court, both the Northern Company and Eckel have appealed.

It is apparent that the theory upon which the court found that the cause of action of the Northern Company was barred by the limitation statute was that it concluded that the suit was filed in behalf of Eckel as plaintiff, without his authority; that Eckel had parted with all interest he had in the subject-matter of the suit before the same was filed and had no interest therein at that time; that as the suit was filed without authority of the original plaintiff, and as such plaintiff could not maintain a suit based upon a subject-matter in which he had no interest, the filing of the same would not stop the running of limitation in favor of the Northern Company, who had not become a party plaintiff, and had not asserted in court a right in the subject-matter until more than four years had elapsed after its cause of action, if any it had, accrued.

Appellant presents as reasons why the judgment should be reversed:

(1) That the attorneys, Hannay and Thompson, under the facts shown, did have authority from both Frank Eckel and the

Northern Company to institute the suit as originally brought, and the court erred in holding that they had no such authority, and in dismissing the suit upon such holding.

(2) That the trial court was without authority to dismiss the suit upon a hearing of the statutory motion filed by the Camden Company, requiring Hannay and Thompson to show their authority to institute or prosecute the suit, since it was shown by the undisputed evidence that, although plaintiff, Eckel, had made an affidavit to the effect that he had not authorized the filing of the suit, which was introduced in evidence, because on the hearing of the motion Eckel testified that he was willing for the suit to continue in his name; that he signed the affidavit without reading it, and that when he signed it he did not understand the circumstances, as he did at the time of his testimony; and since the undisputed evidence shows that the suit had been filed by the attorneys of the Northern Company, to which Eckel had, prior to the filing of the suit, assigned the cause of action, with authority to file and prosecute the same in his name.

(3) That as Eckel had by written instrument assigned the cause of action to the Northern Company, with the agreement that the Northern Company might sue in his name, and that he (Eckel) would assist in an effort to enforce the collection of the claims constituting the cause of action, the Northern Company under such circumstances had the right to intervene in the suit filed by Attorneys Hannay and Thompson in the name of Eckel, and to set up its interest in the cause of action; that under such circumstances the petition of the Northern Company, though filed more than four years after the cause of action accrued, would not be barred by the four-year statute of limitation, since the Eckel suit was filed within the four-year period; for under such circumstances the filing and prosecution of the original petition stopped the running of the statute, as to the intervener, the Northern Company.

[1] We think all of appellant's contentions should be sustained. We are of opinion that the court erred, in the first place, in dismissing the original suit upon the holding that Attorneys Hannay and Thompson were without authority to bring the suit in the name of Eckel; and, second, in holding that the petition of the Northern Company was, at the time it was filed, barred by the four-year statute of limitation, and in dismissing the suit upon such holding. By article 320, Revised Statutes of 1925, relative to motions requiring attorneys to show authority to file suits, it is provided that, upon a hearing of such motion, the burden of proof is upon the attorney whose authority is questioned to show his authority to prosecute the suit, and that, upon his failure to show such authority, the court should refuse to permit him to appear in the cause, and that, if no person who

is authorized to *prosecute* the cause appears, the suit should be dismissed.

[2] At the time the court held that Attorneys Hannay and Thompson were without authority to prosecute the present suit, the Northern Company had intervened therein and fully disclosed its interest in the subject-matter thereof, and its attorneys were present in court attempting to prosecute the suit. The plaintiff, Eckel, was also present in court, expressing his willingness that the suit might continue as originally brought. These facts show clearly that before the suit was dismissed the attorneys were authorized to prosecute the suit by both Eckel and the Northern Company, and that before such dismissal they did appear in court for such purpose. If it be conceded that Hannay and Thompson, at the time the original suit was brought, had no authority to bring the same in the name of Eckel, still the court was, under the provision of article 320, not authorized to dismiss the suit for that reason, because the undisputed facts show that before the motion to dismiss was heard the attorneys mentioned were authorized to prosecute the suit, and that they did appear in court for that purpose before the court dismissed the same.

[3] If it be conceded that the court properly found that neither Hannay nor Thompson had authority to bring the original suit, and for that reason dismissed the original suit, still we are of opinion that it was error to dismiss the petition of the intervener, Northern Company, which was filed before such dismissal, for it was made clear to the court by the allegations of the petition, as well as by the undisputed evidence upon the hearing of the motion to dismiss, that the Northern Company was the owner of the major part of the claim sued upon, if not all of it. Under such facts the rights of the real owner could not be defeated by a dismissal of the original petition, even though it had been dismissed at the request of the nominal plaintiff, Field v. Gantier, 8 Tex. 74; San Antonio So. Ry. Co. v. Morgan (Tex. Civ. App.) 257 S. W. 702; Foote v. O'Roork, 59 Tex. 215; Howard v. Stahl (Tex. Civ. App.) 211 S. W. 826.

The cause of action set up in the original petition filed for Eckel as plaintiff is the same as that declared upon in the plea of intervention which the court permitted the Northern Company to file. In so far as the Camden Company is concerned, there is no new cause of action set up by the intervention plea. In San Antonio So. Ry. Co. v. Morgan, supra, the court said:

"Morgan sold the cattle before they were shipped to Wheeler, but the cattle were billed by the railroad agent in the name of Morgan, and he had the right to prosecute the suit in his own name, and that suit stopped the running of limitation, and when Wheeler intervened, setting up his ownership in the cattle, his was not a new suit. Railway v. Robinson (Tex. Civ.

App.) 131 S. W. 444; Railway. v. Galloway (Tex. Civ. App.) 165 S. W. 546; Railway v. Cox (Tex. Civ. App.) 150 S. W. 265."

In Field v. Gantier, supra, the court said:

"But it is insisted that the cause of action was barred before the institution of this suit, and that the case was therefore rightly dismissed. It does not so appear from the petition. Of the right of the plaintiff to intervene, claim the benefit of the original suit, and prosecute it to judgment, if, as he alleges, he is the owner of the notes, and has never assigned or transferred them to another, there can be no question. And it is very clear that the nominal plaintiffs in that suit could not defeat his right, after the filing of the petition and notice to them, by dismissing the suit."

Appellee, however, contends that the trial court properly dismissed the suit brought in the name of Eckel, and, as a sequence, properly dismissed the intervention of the Northern Company. In support of such contention they cite East Texas Fire Insurance Co. v. Coffee, 61 Tex. 287; Winn v. Fort Worth & Rio Grande Ry. Co., 12 Tex. Civ. App. 198, 33 S. W. 593; Amsler v. Cage (Tex. Civ. App.) 247 S. W. 669; and American Ins. Union v. Allen (Tex. Civ. App.) 192 S. W. 1087.

We do not think any of the cases cited are applicable to the facts of the present case. In each of these cases suit was brought by one who owned no interest whatever in the subject-matter of the suit, and in all of them, except American Ins. Union v. Allen, the suit was brought in the name of the nonowner for his own separate use and benefit. There was no showing in any of them that the legal owner of the subject-matter was in any manner concerned in the institution of the suit. The question of limitation was not involved in any of those cases, as it is in the present case. The question decided by those cases was that one owning no interest in the cause of action could not maintain the suit. The reason upon which the holding in those cases was predicated is that none of the owners of the cause of action was before the court, so that the defendant might be protected against suits which might be brought against him in another suit by the true owner of the same cause of action.

In American Ins. Union v. Allen, supra, the court said:

"The defendant, when sued, has the right to insist that the record as to parties shall be in such condition that the judgment rendered against him will bar a subsequent recovery upon the same cause of action."

The other cases cited by appellee announce the same rule as is announced in the case last cited. All the cases cited by appellee in effect announce the rule that, where a legal owner of a cause of action authorizes the suit to be brought by another for his benefit, the suit may be sustained, and that a judgment rendered therein will bind the legal owner and constitute a bar to a recovery by him in a subsequent suit upon the same cause of action.

[4] We are of opinion that it is clearly shown that the original suit was instituted, not by Eckel alone, but by counsel for both Eckel and the Northern Company, acting in behalf of their respective clients, under and by virtue of the provisions of the instrument by which Eckel transferred, at least, a part interest in the subject-matter of the suit. By such instrument Eckel not only transferred to the Northern Company an interest in such subject-matter, but he thereby authorized the Northern Company to bring suit thereon in his name, and agreed to assist in the collection thereof, and he testified that he had placed the matter of settlement of the controversy between himself and the Northern Company with his attorney, Hannay, to be handled by him as he saw proper. It was shown that the transfer mentioned was prepared by or under the supervision of Hannay.

What we have already said presents sufficient reasons for a reversal of the judgment, and we deem it unnecessary to prolong this already lengthy opinion by further discussion. Having reached the conclusions above expressed, it becomes our duty to reverse the judgment and remand the cause for trial upon its merits; and it is so ordered.

Reversed and remanded.

### On Motion for Rehearing.

Counsel for defendant in error, Camden Company, has filed in this court in behalf of his client a motion for rehearing, and with vigor and apparent earnestness attacks several of our findings and conclusions. He charges that this court has exceeded its authority in setting aside the holding of the trial judge; that we have substituted our findings for those of the trial judge, which were supported by ample evidence; that we have made findings as to matters of which there is no evidence, and in many instances directly contrary to the positive record evidence.

Having made these sweeping charges, he has entered into detailed charges, and says that we erred in holding that the suit brought in the name of Eckel by Attorneys Hannay and Thompson was brought by authority of Eckel, and in reversing the holding of the trial judge to the contrary, which was supported by ample evidence. Being confronted by these charges, whereby we are charged with having departed from the established law of this state, and with having carelessly found to exist, facts which have no record evidence for their support, we feel called upon to make the following statement:

Eckel testified, substantially, that he placed the matters of settlement between himself and the insurance companies in the hands of

his attorney, Allen Hannay, and told him to handle the matter of settlement in his own way, or as he saw best. The undisputed evidence shows that Attorney Hannay, as Eckel's attorney, prepared or had prepared the instrument by which the claims sued upon were transferred to the Northern Company, and that Eckel signed the same and caused it to be delivered to said company. By such instrument, Eckel agreed that the suit for the collection of such claims might be brought in his name, and obligated himself to assist to the best of his ability to collect the claims. It is apparent from the facts above stated that Mr. Hannay was, by authority vested in him by Eckel, authorized to join William Thompson, attorney for the Northern Company, in bringing the suit in Eckel's name, and thereby giving assistance in an effort to collect the claims which Eckel had transferred to the Northern Company.

Counsel charges that we stated that Eckel was asserting a claim of $1,800 against the Northern Company, when, as a fact, the claim was for $2,400. The only evidence with reference to the amount of the claim is the testimony of Mr. Hannay, attorney for Eckel, and he states that the claim was for $2,400, so we must concede that this charge of counsel is technically correct. In the transfer signed by Eckel, which is set out in our opinion, it is recited that the Northern Company paid Eckel $1,800. He gave that figure as the amount of the claim.

We stated in our opinion that Eckel approached Joseph P. Clark for the purpose of procuring insurance, and made application therefor, and that such application was forwarded to Craven, Dargan & Roberts, agents of the Camden Company, and that said agents accepted such application. Counsel, in the motion, attacks such statements as being unsupported by any evidence in the record. In the third paragraph of defendant's *original* answer it is substantially admitted that Frank Eckel did make the application as alleged in the plaintiff's petition, and in the seventh paragraph of the answer it was alleged as follows:

"That the negotiations between the said Frank Eckel and one Joseph P. Clark, or the firm of Messrs. Cravens, Dargan & Roberts, were not completed and were not sufficient to form, and were not intended by any of said parties to form, a completed insurance contract; that the negotiations between plaintiff and one Joseph P. Clark, or the firm of Messrs. Cravens, Dargan & Roberts, were incomplete and not sufficient to form, and were not intended by either party to form, the basis of a valid contract of insurance upon which action for loss by fire to plaintiff's property can be predicated."

Conceding, however, that the statements made, of which counsel complains, were not, technically speaking, shown by any evidence, the same would have no bearing on the issues presented by the appeal and which are before us for determination. They were made only for the purpose of stating the nature of the suit as made by the petition of the plaintiff, and to furnish a preface for an intelligent presentation of the issues before us, and not as having any bearing on the merits of the case, which were not before us. They were made to disclose the asserted relation or authority of the attorneys, whose authority to bring the suit was challenged by appellant in its motion to dismiss the suit for want of authority in said attorneys. It is clearly apparent that we made the statement with reference to the procurement or attempted procurement of insurance by Eckel merely to show the nature of the suit as made by the plaintiff's petition, and we are surprised that counsel has so vigorously attacked the same.

Counsel challenges our finding that W. C. Thompson and Allen Hannay were counsel for their respective clients, the Northern Company and the Camden Company, and says that he had found no evidence in the record that either of those attorneys was the attorney of the Northern Company or of Eckel at the time the suit was filed. Mr. Hannay, whose testimony is undisputed, testified that he represented Eckel in the settlement of his insurance claim against the Northern Company, and that the Northern Company was represented by Mr. Thompson's firm.

Counsel challenges our finding that Eckel testified that he was willing for the suit to continue in his name before the same was dismissed. He quotes parts of Eckel's evidence to support his challenge, but he fails to quote those parts of Eckel's testimony which are as follows:

"Mr. Hannay handled those negotiations with the Northern Assurance Company. I left the matter of arranging the settlement with Mr. Hannay.

"As to whether I executed this agreement, marked as Plaintiff's Exhibit A, at Mr. Hannay's instance, I went down to Houston, and Mr. Hannay was absent from the state; but his partner had all the papers there for me to sign, the settlement papers. This paper you notice has an 'X' there that designates where I was to sign. I did not read the instrument; I left it to him. I signed where he had it marked for me to sign. I signed several instruments at that time; I only remember that one where that 'X' is; I signed that.

"As to whether I, at the present time, have any objection to this suit which is now pending against the Camden Fire Insurance Association, being prosecuted in my name—under that agreement right there, that covers it. I thought he was handling it. When I signed this affidavit that has been read in evidence, I did not understand the circumstances as I understand them now. I left it all entirely to Mr. Hannay. When I signed that affidavit that has been read in evidence, I did not understand just how Mr. Hannay had handled the matter for me. Having now learned how he handled it for me, I do not know as I have any objection to this proceeding that has been provided for in this agreement, as long as it don't reflect on me; I am out of it."

Again:

"As to whether I have no interest in this suit now pending, why Mr. Hannay tells me that this case has never been thoroughly completed; I left it to him."

Again:

"When I signed this agreement that my name appears to here,, marked Exhibit A, I at that time was leaving the whole settlement to my attorneys, to Mr. Hannay. This agreement that I executed, and which my lawyer had prepared, Exhibit A, among other things states that the recovery may be attempted in my name against any of these companies represented by Cravens, Dargan & Roberts."

It is unnecessary to discuss the other complaints in the motion, as they present no grounds for a rehearing. The motion is overruled.

Overruled.