## KERNAGAN v. CITY OF FT. WORTH.
### (No. 8275.)

(Court of Civil Appeals of Texas. Ft. Worth. March 17, 1917. On Motion for Rehearing, April 30, 1917.)

1. MUNICIPAL CORPORATIONS ⬥565—ACTION ON IMPROVEMENT CERTIFICATE—VARIANCE.

If the assignment of an improvement certificate was made subsequent to filing suit thereon, the assignor could further prosecute the suit for the benefit of the assignee, and the assignee would not be a necessary party.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1274.]

2. MUNICIPAL CORPORATIONS ⬥567(6)—ACTION ON IMPROVEMENT CERTIFICATE—VARIANCE.

In such case there is no fatal variance between the allegata and probata as to ownership.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1281.]

3. MUNICIPAL CORPORATIONS ⬥568(1)—ACTION ON IMPROVEMENT CERTIFICATE — EVIDENCE—BURDEN OF PROOF.

In a suit on an improvement certificate, indorsed in blank by the original holder, brought by the city for the benefit of such holder, the burden of proof was on plaintiff to establish ownership of the certificate at the time of institution of the suit.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282.]

4. MUNICIPAL CORPORATIONS ⬥567(6)—ACTION ON IMPROVEMENT CERTIFICATE — VARIANCE.

If an assignment of an improvement certificate and rights thereunder was made prior to the institution of suit thereon for the benefit of the assignor, and it was so shown, a contention of variance should be sustained.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1281.]

5. MUNICIPAL CORPORATIONS ⬥568(1)—ACTION ON IMPROVEMENT CERTIFICATE — EVIDENCE—SUFFICIENCY.

In a suit on an improvement certificate, brought by the city for the benefit of the original holder, in which there was evidence that the certificate, which was indorsed in blank, had been assigned, evidence held not to discharge burden of proof on plaintiff to show ownership of the certificate.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282.]

6. MUNICIPAL CORPORATIONS ⬥568(1)—IMPROVEMENTS—STATUTE.

Ft. Worth City Charter, p. 79, c. 14, § 7, provides that no part of costs of improvements shall be assessed against any owner or his property in excess of the special benefits thereto, or enhanced value thereof arising from the improvement, nor until after the notice and hearing hereinafter provided for. Section 8 provides that notice to the property owner shall be served by publishing same for five successive days in some newspaper published in such city, and by mailing a copy thereof by registered mail deposited in the post office of such city, directed to the address of such owner, if known, at least 10 days before the day of hearing, but that

---

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

notice by publication shall be conclusive, and notice by letter merely cumulative. Section 10 provides for suit by a property owner within 10 days from the conclusion of such hearing, for the purpose of testing the validity of said assessment and of any proceeding had with reference thereto, and further provisions declare that if such suit is not brought a property owner is estopped to set up any defect or omission in such proceedings. Section 15 provides that the recital in such certificates that the proceedings with reference to such improvements have been made in compliance with the terms thereof and all prerequisites to the fixing of the lien, etc., shall be prima facie evidence of the facts so recited, etc., and without further proof be presumed to have been performed. An improvement certificate recited that all proceedings and prerequisites with reference to the improvement had been complied with. *Held* that, in a suit upon the certificate, such recital is at most merely prima facie proof of the performance by the city of the essential steps to fix the lien upon the property abutting on the streets paved, and that, when other evidence tended strongly to show that no steps were taken, the prima facie effect of such recital was overcome.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1282.]

On Motion for Rehearing.

7. APPEAL AND ERROR ⟺799 — MOTION TO DISMISS—SUFFICIENCY.

A motion to dismiss an appeal, on the ground that matters in controversy have been settled, will be overruled, where the motion, as well as supporting affidavit, failed to show that the settlement had in fact been made; there having been merely an agreement to settle on a certain basis, which agreement appellant has failed to perform.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 3158–3160.]

Appeal from District Court, Tarrant County; Marvin H. Brown, Judge.

Action on an improvement certificate · by the City of Ft. Worth, for the use of Roach & Manigan against D. H. Kernagan. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

Flournoy, Smith & Storer and Dedmon & Potter, all of Ft. Worth, for appellant. H. C. McCart and Charles Kassell, both of Ft. Worth, for appellee.

BUCK, J. The city of Ft. Worth, on June 11, 1913, for the benefit of Roach & Manigan, a partnership, filed this suit against D. H. Kernagan, and for cause of action alleged that the board of commissioners of said city, acting under the provisions of its charter, had resolved that certain named streets in said city should be paved, and that a certain part of the cost of such paving should be adjudged against the abutting property owners; that thereafter specifications for said work were prepared by the engineer of said city and submitted to the board of commissioners, and by said commissioners were approved and adopted, and bids for said work were duly advertised for, filed, and opened, and the bid of said Roach & Manigan, contractors, was by said board accepted as

the most beneficial to said city; that said city and said contractors entered into a contract, dated May 23, 1910, for the performance of said work in accordance with the terms of said contract, resolutions, and specifications; that thereafter, by ordinance duly entered, "having first taken all the proceedings and complied with the prerequisites prescribed by law therefor," said city, through said board of commissioners, levied and assessed the cost of said·work, as required by law, in favor of said contractors, against said D. H. Kernagan, as owner of certain described property abutting on said streets; that on June 13, 1911, said city of Ft. Worth executed and delivered to said contractors its certain improvement certificate No. 41, describing said indebtedness and property, and stipulating that the said sum so charged and assessed was duly owing to said contractors from said owner and was a lien upon his said property, and that said sum should be paid to said contractors, or their assigns, in three annual installments, the first installment to be due 30 days after the date of such certificate, and the second and third installments due 1 and 2 years, respectively, after said date, the amount and date of maturity of each installment being evidenced by installment coupons attached to said certificate. This certificate provided that, if any installment was paid within 30 days after date of such certificate, it should bear no interest, but, if not so paid, then such as were not paid on or before maturity should bear interest after date at the rate of 6 per cent. per annum; that a failure to pay any installment when due should mature all deferred payments and cause the unpaid installments to bear interest at 8 per cent. per annum. The certificates were made assignable, and included interest as aforesaid, and costs of collection, together with the reasonable attorney's fees when incurred, and that all of such obligations should constitute a personal claim against the owner of such property and be secured by lien on such property superior to all other liens, claims, or titles, except lawful taxes. While several suits were filed, involving the same parties, yet they were consolidated by order of the court and by agreement of the parties, and we will treat the case as if only one suit had been filed.

Defendant filed his plea in abatement, predicated on the contention that plaintiff, as a municipal corporation, had no authority in law to permit Roach & Manigan, the real beneficiaries, to file said suit in the city's name, and that any law or ordinance providing for such suit was unconstitutional. The plea in abatement having been overruled, defendant further pleaded by way of general demurrer, special exceptions, which will be hereinafter noted as may become necessary, by general denial, by a plea of the two-year

statute of limitation, and by a further plea that the defendant had been given no notice of the purpose of the city of Ft. Worth to have such paving done, and had had no opportunity for a hearing as to the necessity for such paving, or as to whether defendant's property would be enhanced in value by reason of such paving in a sum equal to or in excess of the cost of such paving adjudged against him, or whether or not it would be enhanced in any amount.

By trial amendment, plaintiff pleaded that the paving described in plaintiff's petition was completed and accepted June 13, 1911, as to the property on one street, and on August 8, 1911, as to the property on the other street. By another trial amendment, plaintiff pleaded that the original contract was awarded to the Metropolitan Construction Company, and by it assigned, with the consent of the city of Ft. Worth, to Roach & Manigan. It further pleaded that this suit was brought by the city of Ft. Worth under a resolution of the board of commissioners of said city duly passed.

Upon a trial before the court, judgment was rendered for the city of Ft. Worth, for the use of Roach & Manigan, a partnership, in the form stated, and for a foreclosure of the special assessment lien. Said judgment further provided that if, upon the sale of said described property, the proceeds thereof should be insufficient to satisfy said judgment, then plaintiff was entitled to an execution against the defendant personally to fully satisfy the judgment rendered. From this judgment the defendant has appealed.

Without attempting to take up and discuss separately the 21 assignments of error in appellant's brief, we will direct our attention to the questions and matters presented which, in our opinion, are material to the proper disposition of this appeal. From the statement of facts it appears that the contract for this paving was originally awarded by the commissioners of the city of Ft. Worth to the Metropolitan Paving Company, that after said award had been made the Metropolitan Paving Company went into the hands of a receiver, and that Roach & Manigan, a partnership, purchased the contract from the receiver, and, with the consent of the city of Ft. Worth, completed said paving contract as originally made between the city and the Metropolitan Paving Company. It further appears that in 1912, subsequent to the completion of the work under the paving contract, and the issuance of the improvement certificate which forms the basis of this suit, a corporation was formed under the name of Roach & Manigan Paving Company, which took over the assets of Roach & Manigan, the partnership. Among other assets was this certificate and right of action. The certificate was assigned by Roach & Manigan to the Roach & Manigan Paving Company, but it does not affirmatively appear whether said assignment was made before or after the institution of this suit.

[1-4] B. H. Mason testified for the defendant that he was secretary and treasurer of the Roach & Manigan Paving Company, a corporation, successors to Roach & Manigan, the partnership, on whose behalf suit was filed, and that the corporation had taken over the assets and affairs of the partnership, and was at the time of the trial the legal owner and holder of the certificate. If the transfer or assignment was made subsequent to the filing of the suit—i. e., pendente lite—then the assignor could further prosecute the suit for the benefit of the assignee, and the assignee would not be a necessary party. Bailey v. Laws, 3 Tex. Civ. App. 529, 23 S. W. 20; Drouilhet v. Pinckard, 42 S. W. 135. Nor in such a case would there be any fatal variance between the allegata and probata as to ownership. Watts v. Johnson, 4 Tex. 311. The certificate was indorsed by Roach & Manigan in blank, said indorsement being undated. We are of the opinion that the burden of proof was on plaintiff to establish ownership of the certificate at the time of institution of the suit—in the first place, because it was an essential element of the cause of action asserted; and, secondly, because it was a matter peculiarly within the knowledge of the parties beneficiary, for whose benefit the suit was brought. If the assignment of the certificate and rights thereunder was made prior to the institution of the suit, and it was so shown, then the contention of variance made by the appellee should be sustained. East Texas Fire Ins. Co. v. Coffee, 61 Tex. 287–291.

[5] The corporation having been formed in 1912, and the suit filed in June, 1913, and an officer of the corporation having testified that the corporation took over the partnership assets, which included, presumably, this certificate, we are of the opinion that the plaintiff did not discharge its burden of proof as to the ownership of the certificate. While we are not prepared to say that we would feel impelled to reverse the judgment below upon this question alone, for the assignment is not directed to the admission of the instrument, but rather to a failure of proof, yet the doubt necessarily arising in our minds by reason of the unsatisfactory condition of the proof as to this matter, in connection with other matters, which will hereafter be discussed, causes us to feel that the judgment obtained in the trial court should not be sustained. Hutcheson v. Storrie, 92 Tex. 685, 51 S. W. 848, 45 L. R. A. 289, 71 Am. St. Rep. 884 is authority for the statement that the city charter, which authorizes the city council or city commissioners to improve the streets at the cost of owners of abutting property in proportion to frontage, without regard to special benefits to the property, is violative of sections 17 and 19 of the Constitution of the state and of the Four-

teenth Amendment to the Constitution of the United States, citing Norwood v. Baker, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. Ed. 443. See Rudolph S. Blome Co. v. Herd, 185 S. W. 57.

[6] The charter of the city of Ft. Worth, recognizing this limitation upon the power of the board of commissioners, provides (chapter 14, § 7, p. 79) as follows:

"But no part of such costs shall be assessed against any owner of his property in excess of the special benefits thereto in enhanced value thereof arising from the improvement, nor until after the notice and hearing hereinafter provided for."

The defendant below testified positively that he had received no notice, either by publication, letter, or otherwise, of any hearing afforded by the board of commissioners to the property owners whose property was sought to be subjected to the payment of the costs of paving, though he admits he was absent from the city of Ft. Worth for some three months, including the time the paving in front of his premises was done. The charter provides that notice to the property owner shall be served by publishing same for 5 successive days in some newspaper published in said city, and by mailing a copy thereof by registered mail deposited in the post office of said city, directed to the address of such owner, if known, at least 10 days before the day of hearing, though it further provides that notice by publication shall be conclusive, and notice by letter merely cumulative. There is no attempt on the part of appellee to show that even such published notice was given, or that a hearing was had, unless the recitation in the improvement certificate itself, to wit, "having first taken all the proceedings and complied with the prerequisites prescribed by law therefor," etc., should be held prima facie evidence that the publication of the notice was in fact made and the hearing had. 2 Page & Jones, Taxation by Assessment, § 1292, p. 1945, discusses the presumption as to notice and hearing, and states:

"In the absence of a statute making the assessment prima facie evidence of the validity of all prior steps, it has been said that there is no presumption of the publication of an ordinance, or of a notice calling for bids, or of a notice to pay an assessment. If provision is made for filing objections which the council is to consider, it will be presumed that the council gave a hearing, even though the statute does not specifically require it."

16 Cyc. p. 1076, expresses the rule in the following words:

"It will be presumed that public officers, including persons acting in an official capacity, have been duly elected, and that they have qualified; that their official acts are properly performed; and, in general, that everything in connection with the official act was legally done, whether prior to the act, as giving notice, serving process, or determining the existence of conditions prescribed as a prerequisite to legal action, or subsequent to such act. * * * The presumption of regularity of an official act cannot be used as a substitute for proof of a definite and material fact, * * * nor to supply a fact which the official record affirmatively shows to be absent. The presumption is rebuttable by affirmative evidence of irregularity. The presumption in favor of the regularity of official acts does not extend to acts involving the forfeiture of an individual's rights, the depriving him of his property, or the placing of a charge or a lien thereon."

See Irwin & Sanders v. Mayes, 31 Tex. Civ. App. 517, 73 S. W. 35; Davis v. Tillar, 32 Tex. Civ. App. 383, 74 S. W. 921; Patterson v. Knapp, 99 S. W. 125; Parker v. F. W. & D. C. Ry. Co., 84 Tex. 333, 336, 19 S. W. 518; Moseley v. Bradford et al., 190 S. W. 824.

Wigmore on Evidence, vol. 4, § 2534, says:

"The general experience that a rule of official duty or a requirement of legal conditions is fulfilled by those upon whom it is incumbent has given rise occasionally to a presumption of due performance. This presumption is more often mentioned than enforced, and its scope as a real presumption is indefinite and hardly capable of reduction to rules. It may be said that most of the instances of its application are found attended by several conditions: First, that the matter is more or less in the past, and incapable of easily procured evidence; secondly, that it involves a mere formality, or detail of required procedure, in the routine of a litigation or of a public officer's action; next, that it involves to some extent the security of apparently vested rights, so that the presumption will serve to prevent an unwholesome uncertainty; and, finally, that the circumstances of the particular case add some element of probability."

Without further citation of authority, it is sufficient to say that the verity of the recitations of the improvement certificate is in other respects subject to question, inasmuch as it is shown practically without controversy that the recitation in the improvement certificate, to wit, that said "bids for said work were duly advertised for, filed, and opened, and the bid of Roach & Manigan therefor was by said Board accepted," etc., is in fact incorrect, since the evidence shows that the Metropolitan Paving Company secured an award on its bid, and that the contract secured by the Metropolitan Paving Company was later purchased by Roach & Manigan. The evidence does not show whether Roach & Manigan filed its bid in the first instance or not, but certainly, if it did so, its bid was not accepted. We have not thought that this discrepancy was material on the question of plaintiff's right to recover, but it does tend to show the lack of verity of the recitations of the certificate, in this respect at least; and, in view of the defendant's positive denial of having received notice, the general uncertainty as to whether or not notice was in fact given suggests another reason why the judgment should be set aside. If notice of such hearing had been in fact published, and the hearing had, and no suit was filed by defendant within 10 days from the conclusion of such hearing for the purpose of testing the validity of said assessment for personal liability, and the validity of any proceeding had with reference thereto, as provided in chapter 14, § 10, of the city charter, then it might be held, in accordance with the further provisions of said section, that appel-

lant would be estopped or concluded from setting up in this suit any defect or omission in such proceedings. Gallahar •v. Whitley, 190 S. W. 257; Page & Jones on Taxation by Assessment, § 1030. But in the absence of any actual hearing afforded the property owners affected, or in the absence of legal notice of such hearing, no controlling effect could be given to the provisions of the charter above quoted from chapter 14, § 15, supra; for to hold otherwise would be to hold that, merely from the fact that the certificate recited due notice and the regularity of the proceedings in other respects, a property owner would be precluded from seeking relief from an unjust or burdensome assessment, or to show that in fact there was no notice of any hearing published, or that no hearing was in fact afforded. In other words, at most the presumption of the regularity in the prerequisites and necessary proceedings amounts to a prima facie showing only, and we question whether this prima facie showing has not been overcome by the testimony of the defendant herein. Moreover, at least some of us think that, even though the charter provisions of chapter 14, § 15, to the effect that the recital in the improvement certificate that the proceedings and prerequisites with reference to such improvements have been complied with in order to fix the lien on the property and the personal liability against the owner, should be given the force of a statute as to a rule of evidence, yet there is some doubt as to the constitutionality of such provision. McFarland v. Refining Company, 241 U. S. 79, 36 Sup. Ct. 498, 60 L. Ed. 899. But we do not feel called upon to decide this question, in view of other grounds of error urged and sustained.

Further, we are inclined to think that the contention of appellant that the witness Mason failed to qualify as an expert upon real estate values in the city of Ft. Worth should be sustained; also that neither Mason's testimony, nor that of any other witness, sufficiently satisfied plaintiff's burden of proof that defendant's property was enhanced in value in an amount equal to the assessment adjudged against it. Defendant testified positively that his property was not enhanced in value at all, though he modifies this statement somewhat on cross-examination. However, we do not believe that the witness Mason showed himself sufficiently informed as to real estate values in the locality where the paving was done to testify with reference to the enhancement by reason of the paving, nor that his testimony, if given its full weight, shows that the property was enhanced in an amount equal to the sum adjudged against defendant.

While we are not prepared to say that we would feel called upon to reverse the judgment herein upon any one of the questions discussed, yet by reason of the unsatisfactory condition of the proof as to the several matters mentioned, and the conclusion on our part that the liability of the defendant has not been established with that reasonable degree of certainty required by law, the judgment of the trial court is reversed, and the cause remanded.

Reversed and remanded.

On Motion for Rehearing.

By the statement, contained in the original opinion, that "the defendant below testified positively that he received no notice, either by publication, letter, or otherwise, of any hearing afforded by the board of commissioners," etc., we did not mean to say, as counsel for appellee seems to have understood us, that the defendant testified that no notice by publication was given—merely that he received no notice, and saw no publication of such notice.

For the first time in its motion for rehearing appellee calls our attention to the fact that defendant below, in his answer to plaintiff's petition, not only failed to deny having received notice of a hearing, but, in fact, admitted having "received some sort of notice from the plaintiff in reference to the paving of said street, but do not know what such notice was, except in a general way," etc. We do not feel called upon to reopen the discussion as to this question at this time, and to determine what effect should be given to this qualified admission, in view of our present conclusion that the failure to establish ownership in Roach & Manigan of the improvement certificate would require a reversal of the judgment.

Some question is raised by appellee regarding the following language in our original opinion, to wit:

"But in the absence of any actual hearing afforded the property owners affected, or in the absence of legal notice of such hearing, no controlling effect could be given to the provisions of the charter above quoted from chapter 14, § 15, supra."

What we intended to say, as shown by the further context, was that such recital in the certificate was at most merely prima facie proof of the performance by the city of the essential steps to fix the lien upon the property abutting on the streets paved, and that, when other evidence tended strongly to show that no such steps were taken, the prima facie effect of such recital was overcome.

[7] Appellee has filed a motion to dismiss the appeal, and in said motion alleges that the matters in controversy between appellee and appellant have been settled. But said motion to dismiss, as well as its supporting affidavit, fails to show that in fact the matters in controversy have been settled. At most, it is shown that an agreement was entered into, prior to the submission of the case in this court, to settle upon a certain basis, but that appellant has up to date failed to comply with the agreement asserted. Hence, even if we were inclined to consider

such a motion at this late hour, under the circumstances related, yet we think the motion should be overruled, because the motion and affidavit fail to show a settlement; and it is so ordered.