### AMSLER v. D. S. CAGE & CO. (No. 815.)

(Court of Civil Appeals of Texas. Beaumont. Jan. 22, 1923.)

**Assignments ⚯117, 132 — Assignor cannot maintain action on claim assigned prior to action.**

An assignor cannot maintain action on a claim assigned absolutely by him to a corporation, before the action was commenced, he not having an interest in the subject-matter, though he had guaranteed its collection, and proof of such facts making a variance on his allegation of ownership.

Appeal from Harris County Court; Jno. W. Lewis, Judge.

Action by D. S. Cage & Co. against Mrs. Julia Amsler. Judgment for plaintiff, and defendant appeals. Reversed and rendered.

Samuel Schwartz, of Houston, for appellant.

Moody, Boyles, Walker & Scott, of Houston, for appellee.

O'QUINN, J. D. S. Cage of Houston, doing business under the firm name of D. S. Cage & Co., ordered of the C. Amsler's Estate of Hempstead:

"One (1) car clean, dry No. 1 Spanish peanuts, in good sacks, at price of $1.10 per bushel of 30 lbs. each, sacked, f. o. b. Howth, Texas.

"Terms: Sight draft, bill lading attached; inspection allowed before draft is paid.

"Shipment: To us at Houston within one week from date hereof.

"Conditions: Destination, weights and grades fully guaranteed by you."

The peanuts were shipped from Howth on February 1st, after the contract was made, but for some reason not shown were not delivered to Cage & Co. at Houston until 13 days later. In the meantime, pursuant to the terms of the sale and contemporaneous with the shipment on February 1st, the seller had drawn a draft on the purchaser for $1,187.97, with bill of lading attached, showing consignment of a car of peanuts weighing 32,230 pounds (1,074.33 bushels of 30 pounds each), which Cage & Co. had paid on presentation at Houston; but, when the peanuts were delivered to and weighed by Cage & Co. at Houston on the 13th day after being shipped, the car was found to actually contain only 28,618 pounds (953.93 bushels of 30 pounds each), or a shortage of 120.4 bushels, which, at the contract price, amounted to $132.44. Having overpaid that sum, D. S. Cage brought this suit to recover same.

This is the second appeal. For opinion of Court of Civil Appeals on first appeal, see 217 S. W. 1094. The question involved on this appeal was not involved in the first appeal.

We have concluded that there is but one question to be determined, and that is: Did plaintiff Cage have the right to bring the suit in the manner and form as he did? The undisputed facts show that at the time the contract for the peanuts was made, D. S. Cage was doing business under the firm name of D. S. Cage & Co. After making the contract and after receiving the peanuts and discovering the shortage, Cage incorporated his business under the corporate name of D. S. Cage Company and continued to do business. In forming his corporation, he turned over to said corporation, as assets and property of same, the assets of his former business conducted under the firm name of D. S. Cage & Co., including this claim, among others, and the same was assigned to and became a part of the assets of said corporation and was so carried on the books of said corporation from June 21, 1917, up to and at the time of the trial of this case, Cage guaranteeing all disputed claims that he had assigned to the corporation to be paid, or that he would make same good. Cage testified:

"Upon looking at our records I find that this claim involved in this case was transferred to the corporation; it was transferred on June

21, 1917. There were also some other claims transferred at that time. Some of these were disputed claims and some were not. I guaranteed the payment of those claims. If there should be a recovery in this case, the money would be turned over to the corporation."

Cross-examination:

"The fact remains that I am prosecuting this suit in my own name. The guarantee I gave the corporation as to the payment of those claims was a verbal agreement; I don't think there was any record made of that on the corporate minutes. The consideration for that agreement was that I wanted to incorporate, and there were probably two or three of those items, probably several items uncollected, with the understanding that they were bona fide and would be made bona fide in seeking our charter, and it was understood I would make them good if they were not collected; that is, everything that was not a secured claim, secured claims I was not to pay. I turned this particular claim in to the corporation at its face value. This claim is being carried upon the corporation books, and has been ever since the corporation was organized and since the transfer was made, or since June 21, 1917, as the books show."

This suit was filed June 27, 1917, for the alleged shortage in the sum of $132.44. Appellant answered, among other defenses not necessary to mention, by general demurrer and general denial.

After the cause had reached the Court of Civil Appeals and had been reversed and remanded for a new trial, appellee filed his first-amended original petition in the county court on February 18, 1921, beginning as follows:

"Your petitioner, D. S. Cage, doing business under the firm name and style of D. S. Cage & Co., hereinafter called plaintiff, and leave of the court first having been had and obtained, files this his first-amended original petition, in lieu of his original petition, and complaining," etc.

—and proceeds to set out his cause of action, closing with the following prayer:

"Wherefore plaintiff prays that defendant be cited to appear and answer this petition, and that upon final hearing hereof, he have judgment against the defendant, Mrs. Julia Amsler, for his debt, interest and costs of suit, and for general relief."

Whereupon appellant again pleaded general demurrer and general denial, and the case went to trial upon said pleadings, resulting in a verdict and judgment for plaintiff, from which this appeal is taken.

When the trial court had prepared his charge, submitting to the jury the single issue of "what was the actual weight in pounds of the car of peanuts involved in this suit when delivered to the plaintiff at Houston, Tex., on February 13, 1917?" appellant promptly objected and excepted to the charge, on the ground that appellee was not entitled to any judgment, in that the undisputed evidence showed that, at the time of the institution of this suit, ever since said time and at the time of the trial, plaintiff was not the owner of either the legal or equitable title to the claim sued on, and hence was not entitled to any judgment; which said objection being overruled, appellant then presented her motion for an instructed verdict in her favor, because—

"The undisputed and uncontroverted testimony of the plaintiff herein clearly shows that at the time of the institution of this suit by him he had transferred, assigned and conveyed all his right, title and interest, legal and equitable, in and to the claim sued on to D. S. Cage Company, a private corporation, domiciled in Houston, Harris county, Tex., and if plaintiff ever owned or held any right to maintain this suit, then such right did not exist at the time of its institution or at the date of the trial."

This motion was refused, and its refusal is assigned as error.

We think the assignment must be sustained. The cause of action, if any, accrued to plaintiff on February 13, 1917, the date the peanuts were received and the shortage discovered. The corporation was chartered June 20, 1917. The claim for damages or shortage was transferred to the corporation on June 21, 1917, and was entered as an asset upon its books on that date, and so carried ever since. This suit was filed on June 27, 1917, after the corporation was chartered, and after the claim had been transferred to it. There is no testimony to show that any portion of, or interest whatever in or to, said claim was reserved in himself by appellee, but, to the contrary, he testified, "I turned this particular claim in to the corporation at its face value." True, he also testified that he guaranteed the collection of said claim; that if it was not collected he would make it good, but that was not a reservation of any interest or portion of the claim, but merely made him secondarily liable on it to the corporation. The effect of the assignment or transfer of the claim to the corporation being to divest the appellee of his ownership, an action on the chose could no longer be brought in his name. 30 Cyc. 49. The universal rule is that, to entitle any person or corporation to maintain an action, it must be shown that the one instituting the suit or action has an interest in the subject-matter of the litigation, either in his own right or in a representative capacity. State v. Loan & Trust Co., 81 Tex. 548, 17 S. W. 60; East Texas Fire Ins. Co. v. Coffee, 61 Tex. 287; Kernagan v. City of Fort Worth (Tex. Civ. App.) 194 S. W. 626; Hamilton v. Manufacturing Co., 15 Tex. Civ. App. 338, 39 S. W. 641; 20 R. C. L. 665. Appellee having alleged that he was the owner of the claim sued on, the burden was upon him to so prove. The

undisputed testimony shows that he transferred the claim to the D. S. Cage Company, a corporation, before suit was filed, so that there is a fatal variance in the allegata and probata as to ownership, and the court erred in refusing appellant's motion for an instructed verdict. Kernagan v. City of Fort Worth (Tex. Civ. App.) 194 S. W. 626.

This is not a case where the equitable or beneficial interest is in one party and the legal title in another. Appellee contends that, from the testimony of appellee D. S. Cage, it plainly appears that only the beneficial interest in the claim passed to the corporation, and that "it was understood at the time that the legal title to the claim was to remain in appellee for suit." We do not so interpret the testimony. From the testimony of appellee himself, it is clear that the claim was wholly and completely transferred to, and accepted by, the corporation at its face value and placed upon its books as an asset of the corporation before this suit was instituted. There is no language used that indicates that any interest whatever in the claim was retained by Cage—the fact that he guaranteed the payment of the claim did not retain in him any title, legal or equitable, but made him only secondarily liable for its payment.

The judgment is reversed, and judgment here rendered for appellant.

Reversed and rendered.