KORK KELLEY, D/B/A KORKELE ENIGNEERING PRODUCTION
COMPANY V. BLUFF CREEK OIL COMPANY ET AL.

No. A-6230. Decided January 8, 1958.
Rehearing overruled February 19, 1958.
(309 S.W. 2d Series 208)

*W. E. Fitzgerald,* of Wichita Falls, for petitioner, Kelley.

The Court of Civil Appeals erred in sustaining the error of the trial court in sustaining the pleas in abatement and dismissing the suit. Texas Western Ry. Co. v. Gentry, 69 Texas 625, 8 S.W. 98; Phoenix Ins. Co. v. Allison, 87 Texas 593, 30 S.W. 547; East Texas Const. Co. v. Reno, 231 S.W. 2d 799.

*Donald & Donald* and *Paul Donald,* all of Bowie, for respondent. In response cited Freeman v. Burrows, 171 S.W. 2d 824; Cobb v. Harrington, 144 Texas 360, 190 S.W. 2d 709.

MR. JUSTICE GARWOOD delivered the opinion of the Court.

Our petitioner Kelley brought this action in his own behalf to recover primarily upon a release bond executed pursuant to Art. 5472c, Vernon's Texas Civ. Stats., by the respondents-defendant Bluff Creek Oil Company as principal and Commercial Standard Insurance Company as surety for the release of the petitioner's alleged mechanic's and materialman's lien against three Montague County oil leases. Said Art. 5472c prescribes a limitation period of one year for the bringing of such suits, and this suit was filed within the year. However, during all of the year a bank held the lien under a collateral assignment from the petitioner to secure a debt of the latter in an amount somewhat smaller than that of his lien claim, the bank not ever having been made a party to this suit and having reassigned to the petitioner only well after expiration of the year in question. Our principal holding is that, notwithstanding these latter facts, the action is not barred. Other matters decided relate to the contentions of the respondents-defendant, Bluff Creek and Commercial Standard, that under a further provision of Art. 5472c, supra, action upon the bond was precluded by the petitioner's failure to bring suit within thirty days following his receipt of notice of the bond, as well as by the invalidity of his claimed lien itself; and the contention of Bluff Creek alone (as a petitioner in this Court to that extent) that the Court of Civil Appeals erred in recognizing a personal right of action of Kelley against Bluff Creek, apart from the bond and lien, for the price of the same materials and services which are the basis of the

alleged lien and were allegedly furnished by Kelley to Bluff Creek as operator of the leases in question.

For the opinion of the Court of Civil Appeals, see 298 S.W. 2d 263.

The case arose as follows:

On January 5th, 1951, the petitioner-plaintiff, seeking a mechanic's and materialman's lien against the leases in question, filed an affidavit and annexed account for some $2500 with the county clerk. He thereafter assigned the claim to Wichital National Bank of Wichita Falls by written instrument of March 29th, 1951, reciting a consideration of "Ten ($10.00) Dollars, and other good and valuable considerations" and otherwise purporting to be a complete transfer of ownership "with full power and authority to collect and receipt therefor," although, as above indicated and as shown without contradiction upon the hereinafter mentioned hearing, its purpose was to secure a debt of the petitioner-assignor to the bank in the sum of some $1900. On May 3rd, 1951, the bond for release of the lien was filed, and notice thereof given the petitioner-plaintiff on the following June 12th, all pursuant to Art. 5472c, supra.

Of the latter statute, the portion bearing most importantly on the case reads:

"Sec. 4. No action shall be brought or maintained in any court to establish, enforce or foreclose any lien or claim of lien referred to in such bond unless same shall be brought within thirty days after the service of notice thereof as herein provided. After such 30 days and at any time within one year from the date of such service, the party making or holding such claim of lien may sue upon such bond but no action shall be brought upon such bond after the expiration of such period. * * *"

Kelley has never brought any action concerning his claim except the present suit which he filed on April 24th, 1952 (about ten months after being served with notice of the bond) seeking judgment for the amount of his claim primarily upon the bond and alternatively, and apart from the bond and the lien, a simple money judgment against Bluff Creek alone for the amount of his claim. The mentioned date of suit was, of course, within the one-year limitation period for action on the bond, but some nine months after expiration of the thirty-day period for suits "to establish, enforce or foreclose any lien * * * ." At the time Kelley filed suit, moreover, and until long after passage of the

remaining two months of the statutory one-year period, his assignment to the bank remained in effect; nor did his original petition, nor other pleading filed by him refer to the assignment; nor was the bank ever made a party to the suit.

On May 20th, 1952, the respondent-defendant surety filed an "answer," alleging, so far as presently relevant, that the suit as against it "should be abated and not further considered because," the claimed lien was invalid under the lien statutes and was not owned by the petitioner "at this time" (by reason of the petitioner having assigned it) and because no foreclosure suit had been commenced within the statutory thirty-day period provided therefor.

On July 15th, 1953, prior to any hearing upon the pleas in the case, the bank reassigned to the petitioner-plaintiff his alleged claim and lien by instrument acknowledging the collateral character of the original assignment and full payment of the debt secured.

On May 11th, 1954, the respondent-defendant, Bluff Creek, filed two pleas, the presently relevant grounds of which were substantially the same as the above-mentioned earlier pleas of the respondent-defendant surety.

In March, 1956, the trial court heard the above-described pleas, with evidence thereon, and dismissed the entire suit, including the alternative count against Bluff Creek alone and apart from the bond and lien. The dismissal was expressly and exclusively based on the alleged failure of the petitioner-plaintiff (a) to begin a suit "to establish, enforce or foreclose" his lien within the thirty-day period and (b) to sue, as and while *owner* of the claim, within the one-year period. The Court of Civil Appeals affirmed as to the primary count (on the bond) sustaining ground (b) of the trial court in this behalf, but reversed and ordered a trial on the merits as to the alternative count against Bluff Creek alone. 298 S.W. 2d 263. We granted writ of error, on application of the petitioner-plaintiff, Kelley, to review the affirmance and, because of this action, granted also the application of Bluff Creek questioning the reversal.

■ Our earlier statement, that the above holding (b) presents the principal question in the case, means that holding (a) of the trial court appears to us rather clearly without merit, as, indeed, it evidently did also to the Court of Civil Appeals. Art. 5472c was enacted in 1929 (Chap. 211, 41st Leg., Reg. Sess.).

Its provisions plainly reflect, without benefit of the emergency clause, and even more plainly with it, that its object is to free land from liens by substitution of a surety on an indemnity bond for the security otherwise afforded the unpaid mechanic, contractor or materialman by his lien claimed under Chap. 2 of Title 90, R. S. 1925. Its declared motives include that of enabling landowners, in need of loans upon their lands, to avoid delays from prior claims of liens, as well as that of easing the pressure of foreclosure threats of lien claimants. The statute deals altogether with liens and in nowise purports to affect claims asserted otherwise than as liens.

While we later refer further to the alternative count of the petitioner for a mere money judgment against the respondent, Bluff Crek, alone and apart from the bond or claimed lien, it should doubtless be noted now that this count cannot conceivably be affected by the thirty-day limitation period (or, for that matter, the one-year period) of the statute. The latter simply has no connection with *in personam claims*, whether we look at its specific provisions or its objects or motives. Indeed, the thirty-day provision above quoted affirmatively excludes *in personam* suits under the *expressio unius* rule of statutory construction. And, of course, the one-year period, referring, as it does, only to suits "upon such bond," cannot be taken to include an alternative count or suit, which is expressly *not* a suit "on such bond."

■ But also as to the petitioner's count *on* the bond is the thirty-day limitation irrelevant. Immediately following that provision (see Sec. 4 above quoted) the statute provides that "After such 30 days and at any time within one year" the lien claimant "may sue upon such bond but no action shall be brought upon such bond after the expiration of such period." The latter language affirmatively, as well as unambiguously, permits action on the bond within the year, and neither it nor any other provisions of the statute, unless it be the thirty-day provision itself, purports to attach a condition that a previous action of some kind shall be brought before action on the bond can be maintained. Indeed; such a condition, if made, would be somewhat extraordinary. By the terms of Sec. 1 of the statute, liability on the bond is conditioned upon proof of the validity of the lien in question, and obviously that question could be as well litigated in a suit on the bond as by a separate suit to be filed within the thirty-day period. So why should there have to be two separate suits—one limited to thirty days and the other (on the bond) to a year—in order to reach a judgment in the latter?

The only argument of principle or authority made, or that could be made, toward implying such a strange qualification of an otherwise unqualified permission to sue on the bond within a year, is the single word "establish" in the context "No action shall be brought * * * to establish, enforce or foreclose any lien * * * unless * * * within thirty days * * *." Obviously the words "enforce or foreclose" mean merely that, if the lien claimant insists on an actual foreclosure or its equivalent, rejecting the equally beneficial remedy on the bond, he must do so very promptly or not at all. This is evident from the dominant purpose of the Act itself, which is to free the land from liens and foreclosures by substituting a surety bond for the lien. It would, indeed, be absurd for such a statute to defeat its own object by embroiling the land itself in foreclosure litigation merely in order to maintain an action on the bond. And since obviously any supposedly required foreclosure suit could not be intended to preclude action on the bond, which the statute expressly permits, what would be its purpose? If pursued to judgment, there would be both a judgment of foreclosure and also one on the bond, which is intended to substitute for a foreclosure!

More or less the same reasoning applies to any idea that the claimant must first bring a suit within thirty days to "establish" his lien as a prerequisite to suing within a year on the bond, as the statute affirmatively allows him to do. If the legislative intent had been thus drastically to qualify its affirmative provision, it would probably have so stated in much clearer fashion than here used. Such an intent for two suits—one in thirty days to "establish" the lien and the other within a year on the bond—in order to obtain only an ultimate recovery on the bond, is so unlikely as to be ruled out except as a very last resort. Such a provision would, in effect, impose, at the option of the landowner, an unconscionable limitation of approximately thirty days upon all rights of a genuine mechanic's and materialman's lien holder to his lien, as contrasted with periods of years applicable to other actions. The landowner would simply have to file a bond and give notice thereof. After that the lien holder would have to bring suit to "establish" his lien within thirty days or lose all rights both to his lien and under the bond. Under the circumstances we find little difficulty in construing the word "establish" and its attached comma to mean "establish and." The phrase in question would then read "to establish and enforce or foreclose" instead of "to establish, enforce or foreclose." The result is that the claimant need file no suit at all within thirty days in order to maintain an action on the bond. It makes the statute consistent throughout, preserves its dominant pur-

pose and avoids the highly unusual and harsh results that would otherwise obtain.

■ Dealing now with the principal point of the case, to wit, the right of the petitioner to sue on the bond notwithstanding the bank being a collateral assignee of the claim throughout the one-year limitation period, one may, indeed, argue with force that, generally speaking, an assignment of an entire chose in action, even when the latter does not arise from a written contract (see Arts. 568-570, Vernon's Texas Civ. Stats.), passes both the legal and equitable title to the assignee, and that accordingly a suit on the claim can be maintained in the name of the assignor only where it is actually so brought by or at the behest of the assignee. See, for example, Amsler v. D. S. Cage & Co., Texas Civ. App., 247 S.W. 669; Winn v. Ft. Worth & R. G. Ry. Co., 12 Texas Civ. App. 198, 33 S.W. 593; Independent-Eastern Torpedo Co. v. Herrington, 128 Texas 17, 95 S.W. 2d 377; but see also the alternative holding in San Antonio & A. P. Ry Co. v. D. M. Picton & Co., Texas Civ. App., 111 S.W. 2d 842. wr. of er. refused. However that may be, we think, it more logical to hold that, in the case of an assignment for security only, the assignor has sufficient title to predicate a suit in his own name to the extent of tolling the statute of limitations on the claim as a whole.

Certainly in the sense of beneficial interest, the collateral assignor has a title—no less valuable a one than the owner of a physical chattel, who mortgages or pledges it to another. The interest of the secured creditor is but a securtiy interest in the one case as in the others. If the chose were, for example, a long-term corporate bond convertible up to but not after a given date into common stock of the same corporation, which comes to attain a market value much greater than the face of the bond during the conversion period, surely the security assignee would have some responsibility to the assignor in the matter of not deliberately forfeiting the extra value of the bond by refusing to convert it or sell it prior to expiration of the conversion privilege, even if the assignor's debt to the assignee be not matured. And the only explanation for such responsibility is the obvious one that the assignor is a beneficial owner of the bond.

Nor can there be any doubt that the retained interest of the pledgor of a chose, written or otherwise, is one that will pass by inheritance, will or a transaction *inter vivos*.

In the case of a pledge of a physical chattel, the pledgee,

having the possession, and thus in effect the control, of the chattel, is in much the same situation as the assignee of a chose, particularly where the chattel is tortiously destroyed or damaged or misappropriated by a third party and is thus in a sense converted into a chose or claim against the tort-feasor. While there do not appear to be many decided cases involving such a situation, the rule evidently is that the pledgor may himself maintain an action against the tort-feasor, at least to the extent that his recovery may exceed the amount of the secured debt. Restatement of the Law, Security, Sec. 38 and Comments, pages 117-119; see also the Restatement, Torts, Sec. 220, pages 563-565; 33 Texas Jur., "Pledges," Sec. 16, and cases cited.

As to chattel mortgages, the rule seems to be substantially the same. See 9 Texas Jur., "Chattel Mortgages," Sec. 71, and cases cited.

■ The decisions involving pledges of choses in action are likewise few, and we find none involving the statutes of limitation as does the instant case. In Simson v. Satterlee, 64 N.Y. 657 (a summarized report) the New York Court of Appeals appears to have held that the pledgor of a mortgage, pledged to secure a debt of a smaller amount, might foreclose in his own name. He had named the pledgee as one of the defendants, and the pledgeee was clearly considered by the court as a necessary party, although it was held immaterial that he was named as a defendant rather than plaintiff. In this latter connection, the inference is that joinder of the pledgee is merely a question of parties, so that even if the pledgor's suit had not named the pledgee, the suit would not necessarily have been a nullity for purposes such as tolling the statute of limitations. The Simson case was later cited in Ridgway v. Bacon, a New York Intermediate Appellate Court decision, 72 Hun. 211, 25 N.Y.S. 651, in which it was held that the lienor in a pledged lien could not defeat an action to enforce the lien on the mere ground that the pledgor had no standing to enforce it. "It has long been settled that one who has assigned a lien as collateral security may, if he have an an existing interest in it, maintain an action for its enforcement, and that the assignee is a necessary party to such an action." (25 N.Y.S. 651, 654).

In Butler v. Rahm, 46 Md. 541, it was held that a pledgor of certain bonds might maintain an injunction suit against enforcement of rights of competing creditors of the maker of the bonds, the court saying: "It is no valid ground of objection that some of the bonds have been pledged by him to other persons

as collateral security, he has not thereby lost his title as owner, and is entitled to maintain this point for himself and all others having an interest as bondholders." While it appeared that the pledgor actually had possession of some of the bonds at the time of the trial, the court evidently regarded this fact as relevant only upon the matter of the pledgor's title apart from the pledge, and not upon the matter of his right to sue as a pledgor. (46 Md. 541, 550).

Cited against our view that a pledgor may toll limitations by suit in his own name upon the pledged chose, is our own decision in East Texas Fire Ins. Co. v. Coffee, 61 Texas 287, some of the language of which does suggest that such a suit is to be treated the same as one by an assignor who has parted with all interest in the chose. The issue in that case was not presented in preliminary fashion as was done in the instant case by the so-called pleas in abatement and did not involve the matter of limitations. The actual problem was whether final judgment had been properly rendered in favor of the pledgor upon the chose, in the face of the fact that the latter was actually held by the collateral assignee, who was not a party to the suit. The court stated that to allow the cause to proceed to judgment would either subject the defendant to a double recovery or cause him to defend the same claim again if the assignee should sue. While holding in effect that the assignor could not have judgment under the circumstances, the court remanded the case so that "the parties may take such steps in the case as may be required to authorize its further prosecution." The inference from this disposition is that if, following the remand, the assignee were made a party, the suit would still be the same suit, rather than a new one. If it were the same suit, of course, limitation would not bar it on the second trial any more than on the first.

In oral argument in this Court and in their briefs as appellees in the Court of Civil Appeals, the respondents-defendant have sought to justify the trial court's dismissal of the case upon the ground that the lien in question was invalid because of the failure of the petitioner-plaintiff to comply with the formalities required by the corresponding statutes, for fixing such liens. We should doubtless note at this point that, although this contention is, generally speaking, relevant to the count on the bond, which presupposes the existence of a valid lien, it yet has no bearing on the alternative count against Bluff Creek apart from the bond and the lien. Obviously the petitioner-plaintiff or any other supplier might have a valid claim against Bluff Creek for the price of goods and services furnished it although, at the

same time, not having a valid lien for reasons such as the respondent-defendant urge. The purpose of the bond being merely to lift asserted liens, its execution clearly has no effect on a claim to the extent that the letter is asserted independently of liens and of the bond.

The record on the hearing of the pleas does suggest doubts as to the validity of the lien in respect of substantial portions of the claim. The affidavit and exhibits indicate that a substantial portion of the materials were supplied prior to four months before the lien affidavit was filed, while another item of "services from August 23rd, 1950 to October 9, 1950 $875.00, is obviously quite indefinite. Moreover, it appears from the testimony that no two or more of the leases were contiguous, while the affidavit and exhibits fail to indicate to which particular lease or leases, and in what proportion, general items of the account such as the above mentioned $875.00 item and a further item of "car expenses 37 days at $10.00 per day—$370.00," were allocable. The oral testimony in the case was largely that of Kelley, who was called as an adverse witness by the respondents-defendant, and does not deal with the particulars of the account.

As indicated by our earlier outline of the case, the trial court evidently did not consider these questions, but based his judgment expressly upon other points, the Court of Civil Appeals doing likewise. Actually, none of the pleas were properly pleas in abatement, but rather pleas in bar, since they all went to the mrits and necessarily involved a final disposition of the case against the petitioner-plaintiff, Kelley, if sustained. As pointed out in McDonald, Texas Civil Practice (Vol. 2, Sec. 7.16, p. 634) and in decisions such as Zarsky v. Moss, Texas Civ. App. 193 S.W. 2d 245, no wr. of er. history, defenses "in bar" are not the proper subject matter of disposition on mere preliminary hearing before the court like pleas in abatement, although a speedy and final judgment may be obtained on the basis of matters in bar and without the formality of a trial on the merits, if the parties so agree or if recourse is had to the process of summary judgment where contested fact issues are not present. The practice of misnaming a plea in bar in order to procure a preliminary trial as if the plea were one in abatement is confusing and not to be encouraged.

The plea of invalidity of the lien being one in bar, and the trial court, as well as the Court of Civil Appeals, having evidently refrained from considering it, we feel justified in not ruling upon it ourselves, particularly since it was not substan-

tially developed in the trial court. We find no obstacle to this view in the failure of the petitioner-plaintiff in the trial court and Court of Civil Appeals to raise the point that matters in bar should not be considered or in the further fact that the respondents-defendant, as appellees below, did seek to sustain the trial court judgment on the ground that the lien was invalid. We are not ourselves raising and adjudicating the propriety of the hearing as fundamental error, but consider it merely as a reason not to go behind the opinion of the Court of Civil Appeals in order to sustain its judgment upon a point which was not, and should not have been, considered by the trial court. The application of Bluff Creek for writ of error does not, of course, deal with this matter, since it is concerned only with the part of the judgment of the Court of Civil Appeals which reversed the trial court's dismissal of the alternative count against Bluff Creek apart from the lien and bond.

The propriety of this latter action of the Court of Civil Appeals is the final question in the case. The court's theory was that "the pleas in abatement related only to the suit against appellees on the bond." As heretofore noted, the validity or invalidity of the lien, as such, has no bearing on the right of the petitioner-plaintiff to a personal action against Bluff Creek. Moreover, the pleas being somewhat ambiguous, we are not prepared to say that the construction of them by the Court of Civil Appeals was incorrect.

The result of our conclusions is that the entire case—both the count on the bond against Bluff Creek Oil Company and its surety, Commercial Standard Insurance Company, and the alternative count *in personam* against Bluff Creek Oil Company alone —must be remanded to the trial court for trial on the merits. Obviously the issues on such a trial will take into consideration what we have decided in the course of this opinion. The judgment of the Court of Civil Appeals is reformed so as to reverse the action of the trial court in dismissing the count on the bond and is otherwise affirmed.

Associate Justice Greenhill not sitting.

Opinion delivered January 8, 1958.

MR. JUSTICE CALVERT, joined by JUSTICE NORVELL, dissenting.

The opinion of the majority nullifies the plain, positive and unambiguous thirty-day provision of Article 5472c, V.A.T.S.

Moreover, the majority's construction of the statute clouds its validity in considerable doubt.

The majority refer to the bond filed by respondent as one "for release of the lien" which petitioner attempted to fix under Chapter 2 of Title 90, and state that the object of bonds filed under Article 5472c "is to free land from liens by substitution of a surety on an indemnity bond for the security otherwise afforded the unpaid mechanic, contractor or materialman under Chapt. 2, Title 90, R.S. 1925." I submit that these statements are much too general and much too broad. There is no language in the Article which provides that the filing of the bond shall operate to release the lien or to free the land from the lien.[1]

Any correct analysis of Article 5472c must begin with recognition that there is a difference between constitutional and statutory liens and that the statute will operate differently on them. As between the parties to it compliance or noncompliance with statutory provisions cannot affect the validity of a self-executing lien arising under section 37 of Article 16 of the State Constitution, and if Article 5472c were interpreted as substituting a bond for the lien, or as effecting "a release of the lien," or as "freeing the land from the lien," it would be invalid. Strang v. Pray, 89 Texas 525, 35 S.W. 1054, 1056; Farmers' and Mechanics' Nat Bank v. Taylor, 91 Texas 78, 40 S.W. 876, 966. In the field of constitutional liens Article 5472c should therefore be held to operate only to protect the rights of purchasers or lenders and to provide the mechanic or materialman with additional security for his debt *if* he complies with the provisions of the statute. How do the provisions of the Article operate on the rights of claimants to statutory liens? The answer to that question requires a more detailed analysis of its provisions.

The statutory bond is payable to the lien claimant or his assignees and is conditioned that the principal and surety will pay to the obligees "the amounts of the liens so claimed by them with all costs *in the event same shall be proven to be liens on such property.*"[2] It is then provided in section 2 that when the bond has been filed and the required notice and return have been registered in the Mechanic's Lien Records, "any purchaser or

---

1.—Contrast the language of Article 5472b-1 in which it is provided that the bond filed thereunder "shall release and discharge all liens fixed or attempted to be fixed by the filing of said claim or claims."

2.—Emphasis added throughout. The bond in this case is conditioned to pay the amount of the lien claimed and all costs "in the event such lien shall be *established* against such property, and in the event such lien be not legally established, then this bond shall be of no force and effect."

lender may rely upon the record of such bond, notice and return in acquiring any interest in said property and shall absolutely be protected thereby."

The obligation of the bond is to pay the amounts of the liens and all costs but *only* "in the event the same shall be proven to be liens" on the property. As a predicate for liability on the bond it therefore becomes necessary that the claims be "proven" or "established" to be liens on the property. It follows necessarily that if a suit to establish a claim as a lien on the property is barred by any statutory limitation, and a plea setting up the statute is interposed, the claim cannot "be proven to be a lien" on the property.

In Section 4 of Article 5472c the Legislature prescribed, in plain and emphatic language, a definite and limited period for the filing of suits to establish claims as liens on property when the statutory bond is filed. The opening sentence in the Section reads: "No action shall be brought or maintained in any court to establish, enforce or foreclose any lien or claim of lien referred to in such bond unless the same shall be brought within thirty days after the service of notice thereof as herein provided." That language is as positive in imposing a period of limitation as is the language of any Article of Title 91 (Limitations) of our statutes. The legal right to interpose a thirty-day limitation plea and thus to defeat an effort of the lien claimant to "establish, enforce or foreclose" his lien or claim of lien accrues, under the statute, to the owner of the property, as owner. The right to interpose the plea in a suit on the bond, in which the establishment of the lien is a necessary incident to liability, also accrues to the owner and the corporate signer as principal and surety on the bond. In this case the owner of the property did not plead the thirty-day statutory limitation as a defense, either to the establishment of the lien, as owner, or to his liability as principal on the bond, but the surety on the bond did. The plea of the surety was sustained in and by the trial court's judgment. The second sentence of Section 4 prescribes a second period of limitation. The sentence reads: "After such 30 days and at any time within one year from the date of such service, the party making or holding such claim of lien may sue upon such bond but no action shall be brought upon such bond after the expiration of such period." The legal right to interpose a plea of limitation based on the second sentence accrues only to the obligors on the bond (the property owner-principal and the corporate surety) to defeat liability on the bond; it does not accrue to the property owner, as owner, to defeat the lien.

The quoted sentences are too plain and clear to admit of different meanings. Their meaning is not doubtful. They are not conflicting. There is no need or room for construction. They deal with separate causes of action for each of which a separate period of limitation is provided. If a lien claimant fails to sue within the thirty-day period, any suit filed by him thereafter to "establish, enforce or foreclose" his claimed lien is subject to a plea of limitation by the property owner even though no effort is made to recover on the bond. If the lien claimant fails to file his suit within thirty days but sues to recover on the bond within one year from the expiration of the thirty-day period, he must establish his lien as an incident to liability on the bond and his suit is subject to a plea of limitation by the principal and surety, either or both.

The majority, under guise of *construing* the statute, have simply written one of the plain, clear and unambiguous provisions, in no way in conflict or inharmonious with the other, out of the statute. It has been written out on the ground that the majority can think of no sound reason why the Legislature should have required two suits, with different periods of limitation, when one suit encompassing the subject matter of both and with but one period of limitation would serve the purpose as well or better. I respectfully suggest that this type of *construction* does violence to what have heretofore been regarded as sound rules of statutory construction. See Weaver v. Robison, 114 Texas 272, 268 S.W. 133; Simmons v. Arnim, 110 Texas 309, 220 S.W. 66; Fire Ass'n. of Philadelphia v. Love, 101 Texas 376, 108 S.W. 158; Texas Highway Commission v. El Paso Bl'd'g. & Const. Trades Council, 149 Texas 457, 234 S.W. 2d 857; Col-Tex. Refining Co. v. Railroad Com. of Texas, 150 Texas 340, 240 S.W. 747. In Fire Insurance Ass'n. v. Love, 101 Texas 381, 108 S.W. 160 this court said: "It is not permissible for a court, no matter what its opinion might be of the policy of the enactment or of the justice of its effect, to substitute its own opinions with regard to such matters for the plain and clearly stated intention of the legislative department."

There are a host of other decisions by this court to the same effect.

Perhaps the rule is no where more appropriately stated as applied to the instant case than in Weaver v. Robinson, supra, where it is said (268 S.W. 133, 141) :

"Some may ask why the Legislature has prescribed this meth-

od of advertisement rather than the one used by the land commissioner. Some may think the latter's method the better one. Some may say there is no reason why sold land should not be offered for sale again before it has been forfeited. But, when the Legislature has spoken in plain language, there is no room for construction. Nor, under the circumstances, are the courts to be concerned with the policy of the enactment or the justice of its effect."

The emergency clause of the Act does not strengthen the majority's action. On the contrary it lends weight to the conclusion that the Legislature meant precisely what it so plainly said in requiring both suits and had sound reason for saying it. The emergency clause reads as follows:

"The fact that a great many claims or liens are filed under the provisions of said Chapter in amounts known to be unjust and for the purpose of creating apparent clouds and liens on titles when, in fact, none exist, delaying property owners in financing temporary loans with long time loans and often bringing about foreclosures which, otherwise, would not be necessary, create an emergency etc. * * *"

If, as the Legislature found, a great many claims were being filed in amounts "known to be unjust" and for the purpose of creating liens when, in fact, "none exist," the requirement that suit be filed promptly to "establish, enforce or foreclose" the claimed lien and thus to establish the bona fides of the claimant becomes understandable. By filing the bond the landowner casts on the lien claimant the burden of demonstrating by prompt action that his claim is not unjust on penalty of losing not only the protection the bond might otherwise afford but the lien itself. Moreover, by the filing of the suit the principal and surety on the bond are put on notice that the claim of the mechanic or materialman is made in good faith and that they must prepare to defend against it. If by suit brought within the statutory thirty-day period the claimant demonstrates that his claim is made in good faith and thereby preserves his lien he must still bring suit on the bond within one year if he wishes to look to the surety for payment. This interpretation of the statute works no hardship on the lien claimant. As to statutory liens, the Legislature having given the lien in the first instance has the same power to take it away. By the thirty-day provision of Article 5427c the Legislature has expressly and clearly taken away the lien when the statutory bond is filed and notice is served if suit to establish, enforce or foreclose the lien is not promptly filed.

If the suit is filed within the prescribed period the claimant has the security of the bond to which he may look for satisfaction of his claim if he files suit thereon within one year.

The real purpose of the statute appears to have been to facilitate the free sale, exchange or mortgaging of property and to protect those who acquire the property or an interest therein. The interpretation here given the statute aids in accomplishing that purpose. When the statutory bond has been filed one wishing to purchase the property or to lend money on it will know that he may do so safely if no suit is filed by the claimant of a statutory lien within the prescribed time. If the suit is filed he will know that he is protected by the bond.

There are no rights of third persons involved in this case. The only question to be determined relates to rights of parties to the asserted debt and lien. The testimony adduced on the trial is far too meager to determine whether the lien asserted by petitioner is, in whole or in part, a constitutional lien. Ball v. Davis, 118 Texas 534, 18 S.W. 2d 1063. But whether the lien asserted is constitutional or statutory it is my opinion that any right of recovery on the bond was lost by failure of petitioner to file suit, within thirty days after notice of filing of the bond, to establish, enforce or foreclose the lien.

I agree with the holding of the majority that the case should be remanded to the trial court for trial of petitioner's right to a judgment against Bluff Creek for the amount of his claimed debt, and as well with their holding that in spite of the assignment of the claim petitioner owned such an interest therein as to justify the bringing of suit in his own name and thus to satisfy the requirement that suit on the bond be brought within one year. But because no suit was brought to "establish, enforce or foreclose" the claimed lien within thirty days, as plainly required by Article 5472c, I would hold that the lien was lost and that therefore there can be no recovery on the bond under count one of the plaintiff's petition.

Opinion delivered January 8, 1958.

Rehearing overruled February 19, 1958.